DEWEY LOCKWOOD *v.* PROFESSIONAL WHEELCHAIR
TRANSPORTATION, INC., ET AL.
(12780)

LANDAU, SCHALLER and SPEAR, Js.

Argued October 26, 1994—decision released February 28, 1995

*Thomas W. Meiklejohn,* with whom was *Jonathan L. Gould,* for the appellant (plaintiff).

*Peter M. Appleton,* with whom was *Morton W. Appleton,* for the appellees (defendants).

*Richard Blumenthal,* attorney general, and *Charles A. Overend* and *Maria C. Rodriguez,* assistant attorneys general, filed a brief for the state department of labor, as amicus curiae.

SCHALLER, J. The plaintiff, Dewey Lockwood, appeals from the judgment of the trial court rendered, after a jury trial, on a directed verdict for the defendants, Professional Ambulance Services, Inc. (Professional Ambulance) and Professional Wheelchair Transportation, Inc. (Professional Wheelchair). The trial court denied the plaintiff's request for a directed verdict against both defendants. The plaintiff claims that the trial court improperly (1) directed a verdict for the defendant Professional Ambulance, (2) failed to direct a verdict in favor of the plaintiff against the defendant Professional Ambulance, (3) directed a verdict in favor of the defendant Professional Wheelchair, and (4) permitted the defendants to introduce evidence with respect to an issue that had already been litigated and decided against the defendants. We reverse the judgment of the trial court.

The jury reasonably could have found the following facts. Lockwood was employed by Professional Ambulance as an emergency medical technician. On May 18,

1988, he was involved in a car accident that resulted in $7000 property damage to the ambulance he was driving. Lockwood was issued a citation for driving at an unsafe speed for the conditions in violation of General Statutes § 14-218a (b).

On July 15, 1988, Lockwood was disciplined by Professional Ambulance for his involvement in the accident. He was issued a warning, suspended from work for three days, and his driving privileges were suspended for six months. After the three day suspension, Lockwood was allowed to return to work as an ambulance attendant, pending reinstatement of his driving privileges.

In June, 1988, Professional Ambulance, pursuant to its policy manual, requested that Lockwood pay it $1000, the amount of the deductible on its insurance policy.[1] Lockwood informed Professional Ambulance that he did not think that the accident was his fault and therefore did not owe the money.

In July, 1988, Lockwood appeared in court with respect to the citation for operating at an unsafe speed. Following a trial, he was found not guilty. Lockwood reported the not guilty verdict to the defendant and repeated his refusal to pay. Professional Ambulance continued to demand the $1000 from Lockwood.

In late September, 1988, Lockwood took a leave of absence from his employ with Professional Ambulance.[2]

[1] The relevant portion of the policy manual states: "Any employee who is involved in a chargeable accident may be required to reimburse the company for the damage resulting to company owned vehicles. This decision will be made by the General Manager and the cost estimate will be given to the employee."

[2] The evidence as to the work interruption is disputed. Lockwood claims that he requested a change in his scheduled hours so that he could attend welding classes. When the request was denied, he took a leave of absence. Professional Ambulance argues that rather than requesting a leave, Lockwood quit his job.

On October 11, 1988, Professional Ambulance instituted an action against Lockwood in the Small Claims Session of Superior Court seeking payment of the $1000 deductible. Lockwood denied liability and counterclaimed against the defendant for interfering with his employment with a separate corporation, Professional Wheelchair.[3] After about two weeks of employment with Professional Wheelchair, Lockwood was terminated for refusing to pay the money to Professional Ambulance.

On November 25, 1988, a trial was held in Small Claims Court. The magistrate judge rendered judgment for Lockwood on Professional Ambulance's claim for the $1000 and for Professional Ambulance on Lockwood's counterclaim of interference with employment.

In December, 1988, after his welding classes were completed, Lockwood informed Professional Ambulance that he was ready to return to work for Professional Ambulance. Harvey Kagan, principal owner and CEO of both Professional Ambulance and Professional Wheelchair informed Lockwood that he would have to pay the $1000 in order to return to work for Professional Ambulance. Lockwood reminded Professional Ambulance that the Small Claims Court had determined that he did not owe the money. Professional Ambulance continued to demand the money as a pre-

---

[3] When Lockwood left Professional Ambulance, he obtained employment with Professional Wheelchair Transportation, Inc., another company located in the same facility as Professional Ambulance. The trial court found that Harvey Kagan is the principal owner and chief executive officer of both companies, but the companies have separate management and supervision.

Lockwood was hired without the knowledge of Kagan. His job was to drive a wheelchair van during hours that did not conflict with his schooling. About two weeks after he was hired, Lockwood was told that Kagan had learned that he was driving a wheelchair van. Lockwood was told that Kagan had given orders that Lockwood be fired from Professional Wheelchair for refusing to pay Professional Ambulance the $1000 for damage to the ambulance.

requisite to employment. Lockwood refused to pay the money and did not return to work for Professional Ambulance.

Lockwood filed suit against both defendants, Professional Ambulance and Professional Wheelchair. At the close of evidence, Lockwood and the defendants filed requests for a directed verdict. The trial court denied Lockwood's motion, but granted the defendants' motions and directed the jury accordingly. Lockwood now appeals from the judgment rendered on that verdict.

## I

As a preliminary matter, we must discuss Lockwood's apparent noncompliance with Practice Book § 4059.[4] The appellant bears the responsibility of providing this court with an adequate record for review. Practice Book § 4061; see also *Dime Savings Bank of Wallingford* v. *Cornaglia*, 33 Conn. App. 549, 554–55, 636 A.2d 1370, cert granted, 229 Conn. 907, 640 A.2d 120 (1994); *State* v. *Rios*, 30 Conn. App. 712, 622 A.2d 618 (1993). The appellant has the responsibility of ensuring that the trial court has signed a copy of the transcript when the decision has been rendered orally. Practice Book § 4059. Here, the trial court neither issued a written memorandum nor transcribed and signed its oral decision. "While we do not condone this deviation from the rules of practice, we may disregard certain procedural irregularities and treat the case as the parties have treated and presented it. We do so here." *Askinazi* v. *Askinazi*, 34 Conn. App. 328, 333 n.4, 641 A.2d 413 (1994); see also *Lambrakos* v. *Car-*

---

[4] Practice Book § 4059 (a) provides in pertinent part: "The court shall include in its decision its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office."

*son,* 174 Conn. 482, 485, 391 A.2d 142 (1978); *State* v. *Beauton,* 170 Conn. 234, 237, 365 A.2d 1105 (1976). Lockwood moved for an articulation pursuant to Practice Book § 4051. The trial court granted the motion in part and denied it in part. In its ruling, the trial court indicated that "it fully and clearly stated the reasons" for its decision when it decided the motions for directed verdict at trial. By so indicating and then signing the order on the motion for articulation, the trial court openly adopted the reasoning contained in the transcript as its findings of fact and conclusions of law. We find this to be sufficient to satisfy the purposes of Practice Book § 4059.

As a second preliminary matter, we must decide whether Lockwood has satisfied his responsibility by providing us with an adequate record with which to review this case. Practice Book § 4061; see also *Barnes* v. *Barnes,* 190 Conn. 491, 493, 460 A.2d 1302 (1983). We must determine whether the articulation, which incorporated the reasoning from the transcript, is adequate for review. If the trial court has not sufficiently articulated the factual or legal basis of its decision, the appellant may move for articulation pursuant to Practice Book § 4051, in order to ensure an adequate record for review. Lockwood did so in this case.

The trial court granted in part and denied in part the motion for articulation, essentially relying on the reasons it gave at trial for directing the verdict. The trial court's reasoning, included in the appendix of Lockwood's brief, is sufficient to provide an adequate record for review.

## II

Lockwood first claims that the trial court improperly directed a verdict for the defendant Professional Ambulance. Lockwood argues that he was discharged in violation of public policy, where there was sufficient

evidence from which the jury could have concluded that he was discharged in violation of General Statutes § 31-73 (b)[5] and where Professional Ambulance demanded money from him despite a court decision that he did not owe the money. We agree.

## A

Directed verdicts are disfavored by the courts. A directed verdict is proper only "if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed . . . or if the evidence is so weak that it would be proper for the court to set aside a verdict rendered for

---

[5] General Statutes § 31-73 provides: "REFUND OF WAGES FOR FURNISHING EMPLOYMENT. (a) When used in this section, 'refund of wages' means: (1) The return by an employee to his employer or to any agent of his employer of any sum of money actually paid or owed to the employee in return for services performed or (2) payment by the employer or his agent to an employee of wages at a rate less than that agreed to by the employee or by any authorized person or organization legally acting on his behalf.

"(b) No employer, contractor, subcontractor, foreman, superintendent or supervisor of labor, acting by himself or by his agent, shall, directly or indirectly, demand, request, receive or exact any refund of wages, fee, sum of money or contribution from any person, or deduct any part of the wages agreed to be paid, upon the representation or the understanding that such refund of wages, fee, sum of money, contribution or deduction is necessary to secure employment or continue in employment. No such person shall require, request or demand that any person agree to make payment of any refund of wages, fee, contribution or deduction from wages in order to obtain employment or continue in employment. A payment to any person of a smaller amount of wages than the wage set forth in any written wage agreement or the repayment of any part of any wages received, if such repayment is not made in the payment of a debt evidenced by an instrument in writing, shall be prima facie evidence of a violation of this section.

"(c) The provisions of this section shall not apply to any deductions from wages made in accordance with the provisions of any law, or of any rule or regulation made by any governmental agency.

"(d) Any person who violates any provision of this section shall be fined not more than one hundred dollars or imprisoned not more than thirty days for the first offense, and, for each subsequent offense, shall be fined not more than five hundred dollars or imprisoned not more than six months or both."

the other party." (Citation omitted.) *Boehm* v. *Kish*, 201 Conn. 385, 389, 517 A.2d 624 (1986). In deciding a motion for a directed verdict, a court must view the evidence in the light most favorable to the nonmoving party. Id., 388.

At the close of evidence, sufficient facts existed to allow a jury to find that Lockwood was discharged from his employment with Professional Ambulance because he refused to pay the $1000. A finding of these facts by the jury would support the conclusion that Professional Ambulance terminated Lockwood in violation of public policy as set forth in § 31-73.

Section 31-73 (b) provides that "[n]o employer . . . acting by himself or by his agent, shall, directly or indirectly, demand, request, receive or exact any . . . sum of money or contribution from any person . . . upon the representation or the understanding that such . . . sum of money . . . is necessary to secure employment or continue in employment. . . ." The language of the statute is clear and unambiguous. It prohibits an employer from demanding any sum of money from an individual as a requirement of employment or as a requirement for continued employment.

The trial court relied on two Attorney General Opinions in limiting the application of § 31-73 to preventing "a . . . kick-back . . . system from being used to exact a payment from an employee to an employer in return for that employee's hiring." The trial court's interpretation of § 31-73 is not in accord with the clear language of the statute and therefore runs afoul of the well recognized rules of statutory construction adopted by our Supreme Court. See *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 186–87, 592 A.2d 912 (1991).

Ordinarily, the construction of a statute by the agency charged with its enforcement is entitled to considera-

ble deference. "However, 'the construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference.' " *Connecticut Light & Power Co.* v. *Dept. of Public Utility Council,* 210 Conn. 349, 357, 554 A.2d 1089 (1989), quoting *Schlumberger Technology Corp.* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987); accord *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities,* 204 Conn. 287, 295, 528 A.2d 352 (1987). Section 31-73 has never been subject to judicial interpretation. Where administrative interpretations lead to a result that is contrary to the language and purpose of the statute, it is within the authority of this court to construe the statute in a manner consistent with its language and purpose.

Our interpretation of § 31-73 is governed by "well defined principles of statutory interpretation that require us to ascertain and give effect to the apparent intent of the legislature." *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987). "To determine the intent of the legislature, we first consider whether the statutory language 'yields a plain and unambiguous resolution.' . . . 'If the words are clear and unambiguous, "it is assumed that [they] express the intention of the legislature" . . . and we need inquire no further. . . .' " (Citations omitted.) *State* v. *Mattioli,* 210 Conn. 573, 576, 556 A.2d 584 (1989). The words of § 31-73 are clear and unambiguous. An employer violates the statute whenever it demands any sum of money from an individual to secure employment or continue employment. We conclude that Professional Ambulance violated § 31-73 when it demanded that Lockwood pay the $1000 before being allowed to return to work.

## B

We now consider the issue of whether § 31-73 contains an important public policy that the defendants violated. Connecticut law provides that an employment contract is presumed to be terminable at will. *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 563–69, 479 A.2d 781 (1984). An exception to the employment-at-will doctrine was recognized, however, in a cause of action for employees who are discharged in violation of the mandates of public policy. *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 480, 427 A.2d 385 (1980). In *Sheets,* our Supreme Court made clear that the statutes of the state are an important source of public policy. "We need not decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy. Certainly when there is a relevant state statute we should not ignore the statement of public policy that it represents." Id.

The court elaborated on the form of the public policy exception when it concluded, "[g]iven the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception. Nevertheless, the plaintiff has not alleged that his discharge violated any explicit statutory or constitutional provision." *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 680, 513 A.2d 66 (1986); see also *Girgenti* v. *Cali-Con, Inc.*, 15 Conn. App. 130, 136–38, 544 A.2d 655 (1988); *Schmidt* v. *Yardney Electric Corp.*, 4 Conn. App. 69, 492 A.2d 512 (1985).

Section 31-73 represents a clear public policy prohibiting an employer from taking advantage of the employment relationship by using the acquisition or continuation of employment as a mechanism for exacting sums of money from an employee. The statute is

written in broad and sweeping language to prohibit such actions by an employer. The discharge of an employee for, as here, refusing to refund a portion of his wages violates public policy as expressed in § 31-73.

## C

We now examine the effect of the small claims judgment, which determined that Lockwood was not liable to Professional Ambulance for the $1000. We conclude that the trial court was precluded from reconsidering that issue, which had been fully adjudicated in a prior judicial proceeding, because the judgment of the Small Claims Court was a final judgment to which the doctrine of collateral estoppel should have applied.

The doctrine of collateral estoppel "prevents a party from relitigating an issue that has been determined in a prior suit." *Gionfriddo* v. *Gartenhaus Cafe*, 15 Conn. App. 392, 402, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989). "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296, 596 A.2d 414 (1991). Both conditions are satisfied in this case regarding the issue of the accident and money owed to Professional Ambulance.

The constitution and statutes of the state, as well as the rules of court, clearly provide that such a decision of the Small Claims Court is final. The Connecticut constitution, article fifth, § 1, provides that "[t]he judicial power of the state shall be vested in . . . a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish." General Statutes § 51-15 authorizes the establishment of the Small Claims Session of the Superior Court to hear

disputes where the amount in dispute is less than $2000. Practice Book § 581 provides that, absent a motion to open for good cause, "the judgments and decisions rendered in the small claims session are final and conclusive."

When the Small Claims Court heard and decided the action brought by Professional Ambulance, it exercised its constitutional authority to resolve disputes finally and conclusively. The decision of the Small Claims Court was a final and conclusive determination that the plaintiff did not owe Professional Ambulance $1000 for damage resulting from the accident. General Statutes § 51-15; Practice Book § 581.

The trial court's discussion of the "many possible reasons why the defendant did not prevail in the small claims suit" was not pertinent to the issue before it.[6] The trial court's observations did not go to the finality of the small claims determination, but to the question of whether that determination was correct. Once the decision by the Small Claims Court had been rendered, it was final, and whether it was correct was no longer at issue. There is no question that the issue was actually litigated in the Small Claims Court and that issue was necessarily resolved by that court. In the Small Claims Court, Professional Ambulance brought suit against Lockwood to recover the $1000. In the present case, Lockwood brought a claim against Professional Ambulance for wrongful discharge from employment in violation of § 31-73.

All elements of the doctrine of collateral estoppel have been satisfied in this case. By allowing the defendants to introduce evidence regarding Lockwood's conduct in the accident and by examining the rationale behind the decision of the Small Claims Court, the trial

---

[6] The trial court noted the possibility that evidence might have been excluded or that witnesses might have been unavailable.

court was allowing relitigation of an issue barred by the doctrine of collateral estoppel. *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 296–303. Because the trial court failed to adhere to the principles of collateral estoppel, the verdict in favor of Professional Ambulance must be reversed.

## III

Lockwood next claims that the trial court improperly failed to direct a verdict for him against the defendant Professional Ambulance. He argues that the undisputed evidence established that Professional Ambulance, in violation of § 31-73, conditioned his employment on payment of a sum of money that the Small Claims Court had determined he did not owe. Although we agree that liability was conclusively established on the part of Professional Ambulance, a directed verdict would not be appropriate in this case.

In ruling on the motion for directed verdict, the trial court stated: "I am . . . for purposes of ruling on the defendants' motion . . . accepting as fact that the reason why Mr. Lockwood was terminated was because he refused to repay the $1000 that was demanded of him." Having accepted this fact, the court went on to deny Lockwood's motion for directed verdict and to grant Professional Ambulance's motion for directed verdict based on the court's conclusion that § 31-73 did not apply to this case. Instead, the trial court should have directed the jury to find for Lockwood on the issue of liability. At trial, the evidence was disputed as to whether Lockwood took a leave of absence or quit his job when he left in late September or early October, 1988. Viewing the evidence either way, Professional Ambulance conditioned Lockwood's employment on payment of the sum of money that the Small Claims Court had determined he did not owe.

Although the evidence was in dispute as to whether Lockwood quit or took a leave of absence, the evidence was uncontradicted that Kagan told him he would not be allowed to return to work because he refused to pay the money. Viewing all of the evidence and inferences therefrom in favor of the nonmoving party, it is clear that Professional Ambulance refused to hire Lockwood because he declined to pay money he did not owe. The refusal to hire an employee for that reason would violate public policy as expressed in § 31-73.

Section 31-73 applies to both the hiring and firing processes involving employment. The statute provides that demanding a refund of wages is illegal if the refund "is necessary *to secure employment* or continue in employment." (Emphasis added.) General Statutes § 31-73 (b). A purpose of the statute is to prohibit demands for refunds of wages in the hiring process. The public policy embodied in § 31-73 applies to hiring. It follows that the actions taken by Professional Ambulance with regard to Lockwood violated the public policy of § 31-73. The evidence presented on the issue of liability was conclusive. All that remained was the question of damages. The trial court should have directed the jury to find for Lockwood as to liability, and proceed to determine damages.

## IV

Lockwood next claims that the trial court improperly directed a verdict in favor of the defendant Professional Wheelchair. He argues that there was evidence from which the jury could have concluded that he was discharged in violation of § 31-73 for refusing to pay a sum of money that he did not owe. We agree.

Professional Wheelchair fired Lockwood for refusing to pay the $1000 to Professional Ambulance. It was uncertain at the time of Lockwood's termination by Professional Wheelchair whether Lockwood in fact

owed the money to Professional Ambulance because the Small Claims Court decision was still pending. Professional Wheelchair, however, violated § 31-73 when it terminated Lockwood for not paying the $1000 because the money was not owed to Professional Wheelchair.

The evidence before the trial court included that Professional Wheelchair and Professional Ambulance are separate and distinct entities. The trial court in fact found that "[t]he two defendants in this case are Professional Wheelchair Transportation, Inc., and Professional Ambulance Service, Inc. Harvey Kagan was the chief executive officer of both defendants, a 100 percent owner of Professional Ambulance and 50 percent owner of Professional Wheelchair." The trial court also found that the reason why Lockwood was terminated was because he refused to pay the $1000 demanded of him. On the basis of these two findings of fact, we conclude that a directed verdict in favor of Professional Wheelchair was inappropriate.

Because Professional Wheelchair is a separate entity and never claimed to be owed any money by Lockwood at the time of his termination, it was not entitled to demand payment of the claimed debt to Professional Ambulance in exchange for continued employment. Professional Wheelchair unmistakably violated the public policy of § 31-73 when it demanded the sum allegedly owed to another corporation in exchange for continued employment. This situation falls within the exception to the employment-at-will doctrine controlling in this state. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. App. 480. The directed verdict in favor of Professional Wheelchair must be reversed.

## V

Lockwood claims finally that the trial court improperly permitted the introduction of evidence by the

defendants with respect to an issue that had already been decided against the defendants. Lockwood argues that the doctrine of collateral estoppel applied to the introduction of evidence involving the accident and money demanded by Professional Ambulance. We agree, and rely on the discussion in part II C of this opinion.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.