[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Edward Meaney, filed a nine count amended complaint[1] on February 15, 1994 against the defendants, Connecticut Hospital Association, Inc. (CHA), Connecticut Hospital Association Insurance Services, Inc. (CHAIS), Dennis May, Donald Berkowitz, Richard Altman, and Ernest Bauer. CHA is a not-for-profit Connecticut organization that assists in the development of health services in Connecticut. CHAIS is a Connecticut corporation affiliated with CHA and engaged in the business of selling, marketing, and advertising insurance products. May is the president of CHA and ex-officio member of the CHA Workers' Compensation Trust Board of Trustees. Berkowitz is vice president of CHA's affiliate Connecticut Health Institutional Services, Inc. (CHIS) and a member of the board of trustees of the abovementioned trust. Altman is the vice president of CHA and CHIS. Bauer is an officer of CHA and executive director of CHA's affiliate, Continuum. The following facts are alleged in the plaintiff's amended complaint.
During January, 1991, May and Berkowitz encouraged the plaintiff to leave his current employer and work for CHA. May and Berkowitz explained that the plaintiff would run his own insurance agency, CHAIS. The defendants also allegedly promised the plaintiff that he would receive a salary and certain benefits during his first year of employment. The plaintiff also alleges that May and Berkowitz promised him a car allowance and a commission structure after his first year of work. CT Page 4095-OO
The plaintiff accepted the proposal and began working for CHA and CHAIS in January, 1991. According to the plaintiff, CHA and CHAIS managed a workers' compensation trust that provides member institutions with programs to contain their workers' compensation costs. The plaintiff was assigned the responsibility of correcting the fiscal and management shortcomings of this trust. During his employment, the plaintiff claims he was responsible for strengthening the trust by generating a significant amount of premiums for it. Furthermore, the plaintiff claims that he developed a long-term care program and introduced Blue Cross and Blue Shield of Connecticut as a new source of income for CHA In addition, the plaintiff negotiated various contacts with other insurance agencies.
The plaintiff alleges that at the time of his hiring, he was told and led to believe that he had an employment contract with the plaintiff and that his employment with CHA, pursuant to the contract, could only be terminated for cause. Furthermore, the plaintiff alleges that before and during the period of his employment, he made repeated requests of the defendants that the parties agree on a commission structure for the plaintiff According to the plaintiff, the parties agreed to provide the plaintiff with commissions during his employment and that despite his requests, a commission structure was never provided. On or about May 27, 1993, Berkowitz informed the plaintiff that his employment with CHAIS was being terminated, effective immediately. The plaintiff claims that he performed according to all of the promises and agreements made between the defendants and the plaintiff, but, notwithstanding his performance, the defendants terminated him without cause in violation of his contract.
In counts I and VIII of the amended complaint, the plaintiff alleges a cause of action for breach of contract. In count II of the amended complaint the plaintiff asserts a claim for promissory estoppel. The plaintiff alleges a cause of action for intentional misrepresentation in count III. In count IV, the plaintiff asserts that the defendants terminated his employment in violation of public policy. The plaintiff alleges a cause of action for tortious interference of contract in counts VI and IX. In count VII, the plaintiff asserts a claim for defamation. The plaintiff asserts a claim for unjust enrichment in count X.
On November 17, 1995, the defendants filed a motion for CT Page 4095-PP summary judgment and a memorandum of law with numerous exhibits claiming that no genuine issue of material fact exists as to all of the plaintiff's claims and that judgment should be entered as a matter of law in favor of the defendants. The plaintiff filed an objection to the defendants' motion and a memorandum of law with various exhibits. The defendants filed a reply memorandum of law and the plaintiff then filed a supplemental memorandum in opposition.
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Barrettv. Danbury Hospital, 232 Conn. 242, 250 (1995). "The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law" (Internal quotation marks omitted.)Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994). "[S]ince litigants ordinarily have a constitutional right to have issues of fact decided by a jury the moving party for summary judgment is held to a strict standard." (Citations omitted; internal quotation marks omitted.) Kakadelis v. DeFabritis,191 Conn. 276, 282 (1983).
Count I: Breach of Contract
In count one of the amended complaint, the plaintiff alleges a cause of action for breach of contract against CHA and CHAIS, claiming that an employment contract existed between himself, CHA and CHAIS, and that according to his contract his employment could only be terminated for cause. The plaintiff alleges that CHA and CHAIS breached this contract when they terminated his employment for no apparent reason. CHA and CHAIS claim that the plaintiff was an at will employee who could be terminated at any time. Accordingly, these defendants claim that a genuine issue of material fact does not exist as to whether the plaintiff could be terminated without cause at any time and therefore, that summary judgment should be granted in their favor as to count one of the amended complaint.
"[A]ll employer-employee relationships not governed by express contracts involve some type of implied contract of employment." (Internal quotation marks omitted.) Torosyan v.CT Page 4095-QQBoehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 13
(1995). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like." Id., 14. "[A]s a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will." (Internal quotation marks omitted.) Id. "Pursuant to traditional contract principles, however, the default rule of employment at will can be modified by the agreement of the parties." Id., 15. "Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." Coelho v. Posi-Seal International, Inc., 208 Conn. 106,113 (1988). "This process of inference is peculiarly a juryfunction, the raison d'etre of the jury system." (Emphasis added; internal quotation marks omitted.) Id.
The plaintiff states in his affidavit, "I asked May for a written contract of employment. He told me I did not need one; that I would be under the May System which he described as you work hard; be loyal to and support CHA and you will have a job forever, unless there is a cause to terminate or fire you." (Internal quotation marks omitted.) (Plaintiff's Affidavit, para. 26, February 6, 1996). The plaintiff further stated in his deposition that Berkowitz said, "[b]asically, all you have to do to stay at work at CHA is be loyal to Dennis and I, and you will have employment there. . . . [W]e are known not to terminate people. . . . Once you are there, . . . you pretty much are guaranteed a job as long as you just do . . . your function." (Internal quotation marks omitted.) (Defendants' Exhibit 2: Plaintiff's Deposition, October 14, 1994, p. 290).
The above statements made to the plaintiff indicate that a question of fact exists as to whether the parties intended to enter into a contract modifying the plaintiff's at-will employment. Since a genuine issue of material fact exists as to whether a contract existed between the parties, the court denies the defendants' motion for summary judgment as to count one of the amended complaint.
Count II: Promissory Estoppel
The plaintiff alleges in the second count of the amended complaint a claim for promissory estoppel against CHA and CHAIS. CT Page 4095-RR According to the plaintiff, he relied on CHA's and CHAIS's promises of employing the plaintiff under a contract with a commission structure by leaving his current employer to work for these defendants. According to these defendants, any statements made to the plaintiff regarding an employment contract were not clear and definite enough to establish a claim of promissory estoppel. The plaintiff argues that a material fact exists as to whether the promises made to him were sufficient to set forth a cause of action for promissory estoppel and, therefore, that summary judgment should not be granted.
"Under the doctrine of promissory estoppel a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." (Internal quotation marks omitted.) D'Ulisse-Cupo v.Board of Directors of Notre Dame High School, 202 Conn. 206, 213
(1987).
In the plaintiff's affidavit he indicates, "I asked May for a written contract of employment. He told me I did not need one; that I would be under the May System which he described as you work hard; be loyal to and support CHA and you will have a job forever, unless there is a cause to terminate or fire you." (Plaintiff's Affidavit, para. 26, February 6, 1996). The plaintiff's affidavit establishes that a question of fact exists as to whether CHA clearly promised the plaintiff that he would be working under an employment contract since May indicated that the plaintiff would only be terminated for cause. Furthermore, a genuine issue of material fact exists as to whether it was reasonable for the plaintiff to rely on this promise. Accordingly, the court denies the defendants' motion for summary judgment as to count two of the amended complaint.
Count III: Intentional Misrepresentation
In count III of the amended complaint, the plaintiff claims that defendants May and Berkowitz knowingly made untrue statements to the plaintiff surrounding their desire to provide CT Page 4095-SS the plaintiff with a commission structure. The plaintiff states that he relied on these statements to his detriment because he left his current employer in hope of receiving commissions with the defendants. May and Berkowitz argue that any statements made to the plaintiff surrounding a commission structure cannot support a claim for intentional misrepresentation.
To establish a claim for intentional misrepresentation, the plaintiff must prove "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; (4) that the latter did so act on it to his injury." (Internal quotation marks omitted.) Maturo v.Gerard, 196 Conn. 584, 587 (1985). "Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact." (Internal quotation marks omitted.) Id.
The plaintiff states in his affidavit, "May told me my primary responsibility was to grow the Trust. He told me that if I grew the Trust, I would be paid money in the nature of commissions or a bonus in addition to my salary based on production." (Plaintiff's Affidavit, para. 29, February 6, 1996). The plaintiff indicated in his deposition that he attended a meeting with May and Berkowitz when the parties discussed the plaintiff's employment with CHA. (Defendant's Exhibit 2, p. 94). At the meeting, the plaintiff inquired about the bonus situation at CHA. (Defendant's Exhibit 2, p. 94). Berkowitz and May indicated that they would readdress the issue at a later date after they determined that the trust was successful. (Defendant's Exhibit 2, p. 94).
On January 28, 1993, the plaintiff delivered his own bonus plan to May and Berkowitz. (Plaintiff's Affidavit, February 6, 1996, para. 59). The plaintiff stated, "I was looking for a bonus program for myself, based on my discussions with May and Berkowitz before I was hired and based on their promise to address the issue once I proved what I could do for the Trust." (Plaintiff's Affidavit, February 6, 1996, para. 59). May submitted his own proposal and according to the plaintiff, under May's proposal, the plaintiff would receive about ten cents for every $100 of premium income brought into CHA by the plaintiff. (Plaintiff's Affidavit, February 6, 1996, para. 62).
The plaintiff's affidavit and deposition testimony indicate CT Page 4095-TT that prior to hiring the plaintiff, Berkowitz and May explained that they would address the bonus issue at a later time. Although May and the plaintiff negotiated the bonus structure, a question of material fact exists as to whether Berkowitz and May only told the plaintiff that they would readdress the issue at a later time in order to induce the plaintiff to work for them since according to the plaintiff, May submitted a bonus plan whereby the plaintiff would receive only a dime for every $100 of new premiums brought into the company. A question of fact exists as to whether May's proposal is an adequate bonus structure or whether it is a poor structure, therefore indicating that May and Berkowitz never intended to provide the plaintiff with any bonuses. Accordingly, a question of material fact exists as to whether the defendants falsely stated their intentions to readdress the bonus issue at a later time, that the defendants knew that their statements to the plaintiff were false, that the defendants made those statements in order to have the plaintiff work for them, and that the plaintiff relied on those statements by leaving his present place of employment to work for the defendants. Accordingly, the court denies the defendants' motion for summary judgment as to count three of the amended complaint.
Count IV: Wrongful Discharge in Violation of Public Policy
The plaintiff alleges in count four of the amended complaint that defendants CHA and CHAIS terminated his employment in violation of public policy because the defendants were using money received from insurance sales to run other non-insurance departments and to pay commissions and bonuses to non-licensed insurance salespeople. The plaintiff claims that these practices were against the law and he was fired for not supporting them. CHA and CHAIS argue that they did not break any laws in the manner in which they used this money and, therefore, they argue that they did not terminate the plaintiff's employment in violation of public policy.
The Connecticut Supreme Court has "approved a common law cause of action in tort for discharges where the discharge contravenes a clear mandate of public policy." (Internal quotation marks omitted.) Magnan v. Anaconda Industries. Inc.,193 Conn. 558, 565 (1984). The employee may recover if he can prove "a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Alterations in original; internal quotation marks omitted.) Schmidt v. Yardney Electric Corp., 4 Conn. App. 69, CT Page 4095-UU 72 (1985). In Sheets v. Teddy's Frosted Foods Inc., 179 Conn. 471,480 (1980), the court stated, "[w]e need not decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy. Certainly when there is a relevant state statute we should not ignore the statement of public policy that it represents." InLockwood v. Professional Wheelchair Transportation, Inc.,37 Conn. App. 85, 94-95 (1995), the court found that the defendant-employer terminated the plaintiff's employment in violation of a public policy when the plaintiff established that the defendant fired him for refusing to pay $1,000 to the defendant. The court found that the defendant violated the public policy set forth in General Statutes § 31-73 prohibiting employers from requiring their employees to pay them any money to secure their employment.Lockwood v. Professional Wheelchair Transportation. Inc., supra, 95.
In the present case the plaintiff alleges that the defendant fired him because he refused to support the defendant's practice of sharing commissions derived from insurance sales with non-licensed entities and persons. General Statutes § 38a-711
provides in relevant part: "PAYMENT OF COMMISSIONS TO UNLICENSED PERSONS. No insurance company or producer shall pay, directly or indirectly, any commission or other valuable consideration to any person . . . or corporation for services performed within this state as an insurance producer unless such person . . . or corporation holds a license to act as an insurance producer in this state. . . ."
The plaintiff explains in his affidavit, "[i]n the first year at CHAIS, I personally sold 4.8 million dollars of insurance for the Trust. The income to CHA was 5% of the premium paid, broken down 2% as agency commission to CHAIS and a 3% administrative fee to CHIS. CHIS did nothing for the 3% which was paid to it from the income to CHAIS. Defendant CHA, acting by Berkowitz, May and Altman simply cost-shifted the monies to CHIS, calling them administrative fees as opposed to commissions. CHAIS, as a licensed agency, could not share commissions with CHIS, which has no license." (Internal quotation marks omitted.) (Plaintiff's Affidavit, February 6, 1996, para. 45). The plaintiff further states, "[a]fter I learned that the Trust had real solvency problems and after Berkowitz fired the entire Trust claims department and after the Trust's accountant (Arthur Anderson) did a claims audit on the Trust and after the actuaries for the Trust (Tillinghurst) suggested that rates charged may not have been CT Page 4095-VV proper, and after other Vice Presidents at CHA began to talk about CHAIS agency commissions being taken by their unlicensed agencies, I insisted upon a hold harmless/indemnification agreement." (Plaintiff's Affidavit, February 6, 1996, para. 47). According to the plaintiff, "I believe that another reason I was fired is that I would not allow my license to be used as a corporate credit card and I complained about CHAIS' income being shared with unlicensed affiliates to enable unlicensed CHA affiliates and their administrators to claim or take portions of commissions earned by CHAIS. . . ." (Plaintiff's Affidavit, February 6, 1996, para. 108).
The plaintiff's affidavit raises an issue of fact as to whether non-licensed entities shared in the insurance commissions received by CHAIS in violation of the state's statutes. Furthermore, the plaintiff's affidavit establishes a genuine issue of material fact as to whether the defendants fired the plaintiff for requesting the hold harmless agreement and expressing his dissatisfaction with the defendant's practices. Additionally, there is a genuine issue of material fact as to whether the defendants' alleged violation rose to the level required by a cause of action for violation of public policy. Summary judgment is "ill adapted to cases of a complex nature or to those involving important public issues, which often need the full exploration of trial." United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 375 (1969). Accordingly, the court denies the defendants' motion for summary judgment as to count IV of the amended complaint.
Count VI: Tortious Interference of Contract
The plaintiff alleges a cause of action for tortious interference of contract against Altman and Bauer in count VI of the amended complaint. According to the plaintiff, Altman and Bauer encouraged Berkowitz to fire the plaintiff because they were jealous of the plaintiff's success at CHA. Altman and Bauer, CHA's agents, claim that they could not have interfered with any contract entered into between their principal and the plaintiff. Furthermore, Altman and Bauer argue that they cannot be held liable for tortious interference of contract because a contract did not exist and because they did not receive any personal benefit through the plaintiff's termination.
"This court has long recognized a cause of action for tortious interference with contract rights or other business CT Page 4095-WW relations. . . . The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship and that the defendants, knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss." (Alterations in original; citations omitted; internal quotation marks omitted.) Solomon v. Aberman, 196 Conn. 359, 364 (1985). "An agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract."Murray v. Bridgeport Hospital, 40 Conn. Sup. 56, 60-61 (Sup.Ct. 1984). "An agent, however, can be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain." Id.
The plaintiff claims that Altman and Bauer were not agents of CHAIS and, therefore, can be held liable for tortious interference of contract without the plaintiff demonstrating that Altman and Bauer received an improper personal gain through use of corporate power. Altman and Bauer were, however, agents of CHA. CHAIS is an entity and agent of CHA. Accordingly, Altman and Bauer were agents of CHA, CHAIS's principal, which is the entity that ultimately terminated the plaintiff's employment. (See Plaintiff's Exhibit DD: Plaintiff's Unemployment Notice from CHA affiliates, June 9, 1993). Therefore, the law surrounding an agent's inability to interfere with his principal's contract with a third party applies to Altman and Bauer.
The plaintiff has failed to indicate any facts that would demonstrate that Altman or Bauer interfered with the plaintiff's alleged contract or that Altman or Bauer received any benefit from this alleged interference. Therefore, a genuine issue of material fact does not exist as to whether Altman and Bauer interfered with the plaintiffs alleged contract or that they received any personal gain from an improper use of corporate power. Accordingly, the court grants the defendant's motion for summary judgment as to count VI of the plaintiff's complaint.
Count VII: Defamation
In count VII of the amended complaint, the plaintiff claims that Berkowitz defamed him after the termination of the CT Page 4095-XX plaintiff's employment. According to the plaintiff, Berkowitz wrote letters to various brokers explaining that the plaintiff no longer worked for CHAIS or CHA because he failed to meet the corporations' high standards. Berkowitz claims, however, that any statements made to third parties were privileged and true. Also, Berkowitz states that the alleged defamatory statements are not damaging even if proven to be false.
To find Berkowitz liable for defamation, the plaintiff must demonstrate that the defendant published false statements that harmed the plaintiff, "and that the defendants were not privileged to do so." Kelley v. Bonney, 221 Conn. 549, 563
(1992). To demonstrate that the defendant possessed a privilege to make such statements to third parties, the defendant must establish "(1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only." Miles v. Perry, 11 Conn. App. 584, 595 (1987). "It is for the court to determine . . . whether the defendant made the defamatory statements while acting on an occasion of privilege. . . ." Id., 594 n. 8. "It is a question of fact for a court or jury, however, to determine whether the defendant has abused a conditional privilege." Id. "A conditional or qualified privilege may be abused . . . if the defendant published or broadcast the defamatory remarks with malice, improper motive, or bad faith." Id.
In a letter to John P. Yacavone, Berkowitz stated that the plaintiff was no longer an employee of CHA. (Plaintiff's Exhibit HH: Letter from Berkowitz to John P. Yacavone, Business Manager of HealthFocus, Inc., May 27, 1993). Berkowitz further stated in the letter, "CHA prides itself in its service to members, unfortunately, one of our employees did not see fit to uphold the high standards of CHA." (Plaintiff's Exhibit HH). Both parties in the case dispute the reasons for the plaintiff's termination and, therefore, there is a genuine issue of material fact as to the truth of the statements. Furthermore, the defendants have failed to submit any evidence indicating that the statements surrounding the reasons for the plaintiff's termination were necessary and, thus, limited in their scope to further any business purpose possessed by the defendants. Therefore, a genuine issue of material fact also exists as to whether the defendants possessed a qualified privilege to make these statements to persons outside the company. Therefore, the court denies the defendants' motion for summary judgment as to count seven. CT Page 4095-YY
 Counts VIII and IX: Breach and Tortious Interference of Contract
In count VIII, the plaintiff alleges that he currently possesses a contract with CHAIS to sell certain insurance products developed by CHAIS and produced by Blue Cross and Blue Shield of Connecticut. (Defendants' Exhibit 14: Brokerage Agreement, April 29, 1993). The plaintiff claims that CHAIS breached this contract by failing to allow the plaintiff to continue to sell these products after his employment termination. In count IX of the amended complaint, the plaintiff alleges a cause of action against Berkowitz for tortious interference of this contract because the plaintiff claims that Berkowitz physically removed the plaintiff from a meeting at Blue Cross and Blue Shield, thus, preventing the plaintiff from selling the products indicated in his brokerage agreement.
The defendants argue that the brokerage agreement is self-serving and not enforceable since the plaintiff signed this agreement both on behalf of CHAIS, Inc. as a director of CHAIS and on behalf of himself as the broker. The plaintiff's two signatures are the only signatures on the contract. (Defendant's Exhibit 14). Accordingly, the defendants argue that a contract did not exist and, therefore, Berkowitz cannot be held liable for tortious interference.
A contract entered into between a corporation and a director is voidable unless the director discloses his interest in the contract to the corporation, a majority of the disinterested directors or a majority of the shareholders approve of the contract, and the contract is not unfair. General Statutes § 33-323(a). According to Connecticut law, "self-dealing transactions are voidable unless the self-dealing director sustains the burden of showing that the self-dealing was fair, was in good faith and was for adequate consideration." Hadden v.Krevit, 186 Conn. 587, 590 (1982).
The parties have not demonstrated that a majority of the corporation's disinterested directors or shareholders approved of the contract between CHAIS and the plaintiff who signed the contract as both the director of the corporation and as the broker. Furthermore, the file does not contain any facts indicating that the contract was fair and made in good faith. A genuine issue of material fact exists as to whether a valid CT Page 4095-ZZ contract existed between the plaintiff and CHAIS. Consequently, a genuine issue of material fact exists as to whether Berkowitz interfered with a contract. Accordingly, the court denies the defendants' motion for summary judgment as to counts VIII and IX.
Count X: Unjust Enrichment
In the tenth and final count of the plaintiff's complaint, the plaintiff alleges a cause of action for unjust enrichment. According to the plaintiff, the defendants received a benefit from the plaintiff's work and the defendants failed to adequately compensate the plaintiff in return. The defendants argue that the defendant received an adequate salary for his work and accordingly, contend that summary judgment should be granted in their favor.
"The right of recovery for unjust enrichment is equitable, its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff." (Internal quotation marks omitted.) National CSS, Inc. v. Stamford,195 Conn. 587, 597 (1985). "Unjust enrichment requires a factual examination of the circumstances and of the conduct of the parties . . . that is . . . a task for . . . the trier of fact." (Alterations in original; internal quotation marks omitted.)Crowell v. Danforth, 222 Conn. 150, 158 (1992).
Although the plaintiff received a salary for his work, the trier of fact must determine whether this salary was adequate and whether the defendants were unjustly enriched at the plaintiff's expense. Accordingly, the court denies the defendants' motion for summary judgment as to count X of the plaintiff's amended complaint.
CONCLUSION
For the foregoing reasons, the court denies the defendants' motion for summary judgment as to counts I, II, III, IV, VII, VIII, IX and X. The court grants the defendants' motion for summary judgment as to count VI.
Freedman, J.