[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In her five count revised complaint, the plaintiff seeks damages for sexual harassment she claims caused her constructive discharge from her employment with the defendant, The Stop Shop Companies, Inc. (defendant). The first count alleges wrongful discharge. The second count claims breach of contract. The third count alleges breach of an implied covenant of good faith and fair dealing. The defendant has moved for an order striking all these counts.
In acting on a motion to strike a complaint, the court takes all well-pleaded facts as admitted by the defendant. RKConstructors Inc. v. Fusco Corp., 231 Conn. 381, 389 n. 2,650 A.2d 153 (1994). Thus viewed, the complaint alleges the following. The plaintiff was employed as a secretary by the defendant. During 1993, Jack Boynton, her direct supervisor and the defendant's Senior Personnel Representative for Connecticut, began to express a romantic interest in her. When the plaintiff informed Boynton that she was not interested in having a relationship with him, he stated that he could "love her from afar."
In February of 1994, Boynton again expressed his love for the plaintiff and suggested that they commence a romantic relationship. When the plaintiff rejected his advances, Boynton allegedly began harassing her about her personal life and monitoring her activities after work. In June of 1994, the plaintiff complained to Gabrielle Pineau, the defendants Personnel Field Representative, about Boynton's behavior. The following month, Pineau arranged a meeting with the plaintiff and CT Page 3017 Boynton in connection with an official investigation of the plaintiff's allegations. The meeting occurred in August, 1994, in Chicopee, Massachusetts. The defendant's Director of Personnel required the plaintiff to drive to the meeting alone with Boynton who harassed the plaintiff during the journey. After the meeting the plaintiff was required to lunch with Boynton and return with him to Connecticut.
In September, 1994, the plaintiff informed the defendant that if her working conditions did not change, she could no longer work for the defendant and would resign, effective October 7, 1994. The plaintiff met with the defendant's Vice President of Distribution on October 6, 1994 and again complained about Boynton's behavior. Despite an indication that the defendant would investigate the behavior and report back to the plaintiff, the defendant did not do so. The plaintiff resigned the following day, October 7, 1994.
 I
The first count of the complaint seeks recovery for wrongful discharge. It alleges that "[t]he conduct of the [defendant] constitutes a wrongful constructive discharge of the plaintiff from her employment with the defendant . . . in violation of the public policy of the State of Connecticut prohibiting sexual harassment in the workplace. In all of the counts which the defendant moves to strike, the plaintiff claims that she "has suffered damages including a loss of income, benefits, and other perquisites of employment, a loss of future income, a loss of earning capacity and career opportunities, humiliation, physical and mental emotional anguish and harm." Since there's a fourth count to the complaint which seeks damages for intentional infliction of emotional distress, it is clear that the first count seeks damages for "humiliation, physical and emotional anguish and harm," as consequential damages, as a result of theplaintiff's alleged wrongful discharge. The defendant moves to strike this count for the reason that there is no cause of action for the wrongful discharge of an at-will employee.
Since there is no allegation to the contrary in the complaint, it is presumed that the plaintiff was an at-will employee. Lockwood v. Professional Wheelchair Transportation,Inc., 37 Conn. App. 85, 94, 654 A.2d 1252, cert. denied,233 Conn. 902, 657 A.2d 641 (1995). There is no cause of action at common law for discharging an at-will employee, except in the CT Page 3018 narrow circumstance where the discharge involves an impropriety derived from some important violation of public policy grounded in a statute or constitutional provision or in a judicially conceived notion of public policy. Parsons v. UnitedTechnologies, Corp., 243 Conn. 66, 76-77, 700 A.2d 655 (1997);Faulkner v. United Technologies Corp., 240 Conn. 576, 580-81,693 A.2d 293 (1997); Morris v. Hartford Courant Co., 200 Conn. 676,679-80, 513 A.2d 66 (1986); Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 572, 479 A.2d 781 (1984); Sheets v. Teddy'sFrosted Foods, Inc., 179 Conn. 471, 427 A.2d 385 (1980). Although there is a statutory prohibition against employment-based sexual harassment, the plaintiff'. common law action fails for another reason.
At the time of the plaintiff's resignation, General Statutes § 46a-60 (a)(8) proscribed an employer from sexually harassing an employee.[1] General Statutes § 46a-100, moreover, provided: "Any person who has timely files' a complaint with the Commission on Human Rights and opportunities in accordance with section 46a-82, alleging a violation of section 46a-60 and who has obtained a release from the commission in accordance with section 46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford-New Britain." General Statutes § 46a-101 (a) provided: "No action may be brought in accordance with section 46a-100 unless the complainant has received a release from the commission in accordance with the provisions of this section."
Our courts have "frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specific remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure. Norwich v. Lebanon, 200 Conn. 697,708, 513 A.2d 77 (1988); Cannata v. Department of EnvironmentalProtection, [215 Conn. 616, 623, 577 A.2d 1017 (1990)]. The plaintiff's independent civil action-contravenes these holdings."Johnson v. Dept. of Public Health. 48 Conn. App. 102, 120,710 A.2d 176 (1998).
The plaintiff responds, first, that the existence of a statutory remedy does not necessarily prevent a plaintiff from CT Page 3019 pursuing her common law remedies." The short answer to this claim is that "a cause of action in tort for wrongful termination . . . exists only when a discharge violates public policy and the employee is otherwise without a remedy." Pucci v. AmericanRepublican, Superior Court, judicial district of Waterbury, Docket No. 118491, (May 23, 1994) (9 CSCR 626, 627). "When the legislature enacts a comprehensive remedial scheme such as [the Human Rights Statute] with procedural safeguards by which claims are to be determined by an administrative agency before judicial review is made available, it has laid that down as the public policy most likely to produce results. To effectuate this public policy, the legislative intent is that the trial court should not, generally speaking, act or be called upon to act, until there has been compliance with the statutory scheme." Johnson v.Dept. of Public Health, supra, 48 Conn. App. 120.[2]
Second, the plaintiff claims that her administrative remedy is not adequate because she is making a claim "for general and punitive damages," which the Commission on Human Rights and Opportunities (CHRO) cannot award.
"[I]t is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . Exhaustion is required even in cases where the agency's jurisdiction is challenged. . . . [As] our Supreme Court [has] said: The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." Johnson v. Dept. of PublicHealth, supra, 48 Conn. App. 111. "Furthermore, the plaintiff's preference for a particular remedy does not determine the adequacy of an administrative remedy. . . . Savoy Laundry, Inc. v.Stratford, 32 Conn. App. 636, 642, 630 A.2d 159, cert. denied,227 Conn. 931, 632 A.2d 704 (1993)." Id., p. 119.
The plaintiff's argument is unpersuasive. Since there is no common law action for wrongful discharge of an at-will employee, it is a nonsequitur to claim that the statutory remedy created by the legislature is "inadequate." See White v. Martin, United States District Court, D. Conn., No. 3:98CV00367 (GLG) (Oct. 13, 1998) (1998 WL 720473 (D. Conn.)) The legislature is not required CT Page 3020 to change the common law rule at all and, if it does so, may do so only incrementally. Moreover, although it is true that the CHRO, which may order reinstatement with or without back pay, may not make an award of damages for emotional distress or attorney's fees; Bridgeport Hospital v. Commission on Human Rights Opportunities, 232 Conn. 91, 101, 653 A.2d 782 (1995); the CHRO may grant a plaintiff a release to bring a civil action in superior court where other relief is available. General Statutes § 46a-100.
 II 
The second count generally incorporates the allegations of the first count and claims a breach of contract based on the provisions of an employee handbook. This count alleges that the defendant published an employee handbook containing its policies and procedures regarding conduct in the workplace, generally, and more specifically, its policies with respect to sexual harassment. The plaintiff further alleges that this "handbook and written guidelines, policies and procedures of employment published by the defendant, The Stop Shop Companies, Inc., constituted a contract binding the plaintiff and the defendant
to the terms thereof, and the plaintiff, as an employee of the defendant, The Stop Shop Companies, Inc., was a direct, intended beneficiary of the contractual relationship established thereby." Finally, the plaintiff alleges that the conduct of the defendant constitutes a breach of contract with the plaintiff.
In moving to strike this count, the defendant argues that "[t]he plaintiff's vague allegation fails to set forth facts that Stop Shop explicitly agreed by words or conduct to undertake a contractual commitment to the plaintiff. Brief reference to an employee handbook and written guidelines is insufficient to plead the existence of a binding contract."
It remains true that in the absence of any allegation to the contrary, the plaintiff is presumed to be an at-will employee. However, representations in an employee document such as a personnel manual, under appropriate circumstances, may give rise to an express or implied contract between employer and employee.Finley v. Aetna Life Casualty Co., 202 Conn. 190, 198-99,520 A.2d 208 (1987), overruled on other grounds, Curry v. Burns,225 Conn. 782, 626 A.2d 719 (1993).
Just how the defendant's conduct breached the contract CT Page 3021 allegedly created by the employee handbook, written guidelines, policies and procedures, is not disclosed in the complaint. Under our practice, however, "[a] general allegation, sufficient to give the plaintiff notice of the nature of the contract which would be attempted to be proved, [is] all that was required."Woodbridge Ice Co. v. Semon Ice Cream Corporation, 81 Conn. 479,484, 71 A. 579 (1909); see also Normand Josef Enterprises v.Connecticut National Bank, 230 Conn. 486, 496, 646 A.2d 1289
(1994) ("As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, [the court] will not conclude that the complaint is insufficient to allow recovery.") If the defendant was desirous of eliciting a more particularized statement of the nature of the provisions of the employee handbook or other documents which it is claimed the defendant breached, the defendant could have filed a request to revise.D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 220, 520 A.2d 217 (1987). Not having done so, the defendant cannot now complain of the vagueness and lack of specificity in this count. The defendant's challenge must now be made by a motion for summary judgment.
 III 
Finally, the defendant moves to strike count three of the complaint, which claims that the defendant violated the covenant of good faith and fair dealing.[3]
"In Magnan v. Anaconda Industries, Inc., 193 Conn. 558,479 A.2d 781 (1984), our Supreme Court addressed the issue of whether the doctrine of an implied covenant of good faith and fair dealing is applicable to the termination of an employment contract. The Magnan court accepted the principle that implied in every contract of employment is a covenant of good faith and fair dealing in the contractual relationship, but specifically `decline[d] the invitation of the plaintiff to transform the requirement of good faith into an implied condition that an employee may be dismissed only for good cause.' Id., 571. TheMagnan court then went on specifically to limit the reach of the newly recognized covenant of good faith and fair dealing in the employment context. `Although we endorse the applicability of the good faith and fair dealing principle to employment contracts, its essence is the fulfillment of the reasonable expectations of the parties. Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in CT Page 3022 exercising this contractual right. Like other contract provisions, which are unenforceable when violative of public policy, the right to discharge at will is subject to the same restriction. We see no reason presently, therefore, to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves "impropriety . . . derived from some important violation of public policy "`Id., 572, quoting Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,475, 427 A.2d 385 (1980) (recognizing common law cause of action in tort for discharge of an at-will employee where reason for discharge violates public policy)." Doherty v. Sullivan,29 Conn. App. 736, 742-43, 618 A.2d 56 (1992).
The allegation contained in count three, that the defendant breached the covenant of good faith and fair dealing implied in the employment relationship, is also unavailing. A violation of public policy may breach the covenant of good faith and fair dealing. However, as discussed supra in part I, the policy violation at issue here, codified in General Statutes §46a-60 (a)(8), is one for which the legislature requires the plaintiff first to avail herself of the applicable administrative remedies before invoking the jurisdiction of the court. SeeBennett v. Beiersdorf, Inc., 889 F. Sup. 46, 49 (D. Conn. 1995);Pucci v. American-Republican, Superior Court, judicial district of Waterbury, Docket No. 118491, (May 23, 1994) (9 CSCR 627);Poulos v. Pfizer, Inc., Superior Court, judicial district of New London, Docket No. 520719, (June 24, 1992) (6 Conn. L. Rptr. 545, 546).
The defendant's motion to strike is granted as to counts one and three and denied as to count two.
BY THE COURT
Bruce L. LevinJudge of the Superior Court