Linda J. **OJA,** on behalf of herself and all others similarly situated, Appellant,

v.

**DAYTON HUDSON CORPORATION, Respondent.**

No. C0–90–193.

Court of Appeals of Minnesota.

July 24, 1990.

Review Denied Sept. 14, 1990.

Steven C. Thal, St. Louis Park, James G. Ryan, Mavity & Ryan, Minneapolis, for appellant.

Steven R. Anderson, Donald Peder Johnsen, Faegre & Benson, Minneapolis, for respondent.

Considered and decided by FORSBERG, P.J., and KALITOWSKI and MULALLY,* JJ.

## OPINION

FORSBERG, Judge.

Linda Oja appeals from a grant of summary judgment to respondent Dayton Hudson Corporation (Dayton's). We affirm.

## FACTS

Oja has a 24–year employment history with Dayton's. She currently works part-time as a sales consultant in one of Dayton's shoe departments.

Dayton's procedures require a sales consultant to enter her employee number into the computer terminal while completing a sale. A sales consultant is also required to write her employee number on the box of shoes sold.

Dayton's has a liberal policy on returns, and will generally take back any shoes which do not satisfy the customer. In processing a return, a sales consultant is required to enter into the computer terminal the employee number of the consultant who originally sold the shoes. This number should be found on either the receipt or the shoe box. If the customer does not present the receipt or the box, if the original consultant did not properly process the sale, or if the consultant fails to properly process the return, there is no way to determine who originally sold the shoes. Unidentified returns can also be generated if a customer returns stolen shoes or shoes purchased from another store.

Oja is paid a 9% commission on her net sales. She receives a weekly check constituting a draw against her commissions. When the commissions are calculated each month, she receives an additional check for the amount, if any, by which her earned commissions exceed her draw. If the commissions that she earned are less than the amount that she has taken in draw, she does not have to pay back the difference to Dayton's. The commission deficiency is carried over to subsequent pay periods until she has earned sufficient commissions to meet or exceed her draw.

Prior to February 28, 1988, net sales for a given commission period were calculated by subtracting the amount of returns that could be traced to sales by a particular consultant from gross sales. Unidentified returns were not included in the calculation.

On February 28, Dayton's instituted a new procedure for calculating net sales. Under the new system, a sales consultant's net sales are calculated by subtracting not only returns that can be traced to sales made by her but also a proportionate share of unidentified returns from gross sales.

Oja thereafter initiated this action, claiming Dayton's policy violates Minn.Stat. § 181.79, subd. 1, which prohibits employers from making certain deductions from an employee's wages without authorization from the employee. In ruling on Dayton's motion for summary judgment, the trial

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

court recognized Oja raised "some serious questions about the fairness of the compensation scheme." The court nevertheless concluded Dayton's system for calculating commissions does not violate the statute, and granted summary judgment to Dayton's.

## ISSUE

Did the trial court err in concluding Dayton's system for calculating commissions does not violate Minn.Stat. § 181.79?

## ANALYSIS

■ On appeal from summary judgment, the appellate court must review the record to determine whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989). Here, the material facts are not in dispute. The parties differ only in their application of Minn.Stat. § 181.79 to this particular set of facts.

Minn.Stat. § 181.79, subd. 1 (1988) provides in pertinent part:

No employer shall make any deduction, directly or indirectly, from the wages due or earned by any employee * * * for lost or stolen property, damage to property, or to recover any other claimed indebtedness running from employee to employer, unless the employee, after the loss has occurred or the claimed indebtedness has arisen, voluntarily authorizes the employer in writing to make the deduction[.]

*Id.* The statute forbids deductions from "wages due or earned." *See Stiff v. Associated Sewing Supply Co.*, 436 N.W.2d 777, 780 (Minn.1980). The determinative question in this case is whether Oja's commissions were "due or earned," at the time of the deduction within the meaning of the statute.

In *Meyer v. Mason Publishing Co.*, 372 N.W.2d 403 (Minn.App.1985), the employee was a commissioned book salesperson. He was initially paid a draw against commissions on his sales, and the amount of commissions was reduced by the amount of returned goods. Eventually, the draw was stopped and the employee was paid commissions on the sales by his marketing team. During the time he was paid a draw, the draw exceeded the commissions to which he was entitled, apparently because of returns. To recover commissions previously paid for returned books, the employer began deducting 20% of the commissions that the employee earned as supervisor of the sales team. The employee sued, claiming the employer had violated § 181.79. In affirming the trial court's rejection of the employee's claim, this court concluded the statute applied only to deductions from wages actually earned:

The trial court's finding that [the employee] did not have commissions due or earned is supported by the record. [The employee] did not dispute the [amount of the returns] and acknowledged his draw exceeded his earned commissions. [The employee] admitted he was only entitled to commissions on actual sales. [The employee] also stated he understood draw against commission would later be deducted from earned commissions. * * * The trial court correctly concluded [the employee] did not have wages due and payable under Minn.Stat. §§ 181.13, 181.79 (1984).

*Meyer*, 372 N.W.2d at 405. In essence, the employee's commission was not due or earned until amounts for returned merchandise were subtracted from his gross sales.

■ Here, Oja has been promised a 9% commission on her net sales. For each commission period, net sales are determined by subtracting identified returns and unidentified returns from gross sales. Returns do not result in repayment of past commissions, but merely reduce net sales for the period in which they occur. Oja is thus paid a commission on her net sales for a particular period of time; she is not entitled to a commission on the gross sales price of each pair of shoes she sells as soon as she makes the sale. Because her commission or compensation is not "due or earned" until certain amounts for returned merchandise have been subtracted from her gross sales, Dayton's policy does not violate Minn.Stat. § 181.79.

## DECISION

The grant of summary judgment to Dayton's is affirmed.

Affirmed.