AMANDA MYTYCH ET AL. *v.* MAY DEPARTMENT
STORES COMPANY
(SC 16541)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued January 17—officially released April 23, 2002

*Joseph D. Garrison*, with whom was *Jeffrey S. Bagnell*, for the appellants (plaintiffs).

*David E. Martin*, with whom was *Jeffrey J. Tinley*, for the appellee (defendant).

*Peter A. Janus* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

*Judith D. Meyer* filed a brief for the Connecticut Employment Lawyers Association as amicus curiae.

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the trial court properly concluded that the formula used by the defendant, May Department Stores Company, for calculating a salesperson's commission does not violate the prohibition of General Statutes §§ 31-71e[1] and 31-73 (b)[2] against an employer deducting any money from its employees' wages. The plaintiff salespersons claim that the trial court improperly granted the defendant's motion for summary judgment because the court incorrectly interpreted the statutes as purely remedial in nature. According to the plaintiffs, the statutes embody substantive provisions regarding how wages may be calculated and when wages are

---

[1] General Statutes § 31-71e provides: "No employer may withhold or divert any portion of an employee's wages unless (1) the employer is required or empowered to do so by state or federal law, or (2) the employer has written authorization from the employee for deductions on a form approved by the commissioner, or (3) the deductions are authorized by the employee, in writing, for medical, surgical or hospital care or service, without financial benefit to the employer and recorded in the employer's wage record book."

[2] General Statutes § 31-73 (b) provides in relevant part: "No employer . . . shall, directly or indirectly, demand, request, receive or exact any refund of wages, fee, sum of money or contribution from any person, or deduct any part of the wages agreed to be paid, upon the representation or the understanding that such refund of wages, fee, sum of money, contribution or deduction is necessary to secure employment or continue in employment. No such person shall require, request or demand that any person agree to make payment of any refund of wages, fee, contribution or deduction from wages in order to obtain employment or continue in employment. . . ."

earned or vested, and that the defendant's formula is in violation of such provisions. We disagree and affirm the judgment of the trial court.

This class action was brought by the named plaintiff, Amanda Mytych, and the plaintiff, Verette Michaud, against the defendant, the owner of various department stores, including Lord & Taylor and Filene's, to recover damages for alleged violations of §§ 31-71e and 31-73 (b) on behalf of current and former salespersons employed by the defendant. The case originated in state court, but the defendant removed it to federal court, claiming jurisdiction based on diversity of citizenship. The parties later stipulated, however, that the plaintiffs did not meet the amount in controversy requirement[3] and the case was remanded to state court. The defendant subsequently moved for summary judgment, claiming that there was no dispute as to the material facts that the plaintiffs' wages were calculated pursuant to a valid wage agreement, were paid in full, and did not violate any statutory provisions. The trial court granted the defendant's motion. The plaintiff thereafter appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

The relevant facts are undisputed. The plaintiffs are or were salespersons employed by the defendant at its Filene's and Lord & Taylor department stores in Connecticut. In October, 1995, Mytych accepted Lord & Taylor's offer of employment as a part-time commissioned salesperson in the women's shoe department at its WestFarms Mall store. Upon acceptance of the offer, Mytych was provided with a copy of the Lord & Taylor women's shoes associate commission agreement (com-

---

[3] Title 28 of the United States Code, § 1332, requires that plaintiffs in a federal action for damages meet a $75,000 amount in controversy requirement. In this case, the plaintiffs did not meet this minimum threshold.

mission agreement), which informed her that she would receive an 8 percent commission on her net sales. The commission agreement defined "net sales" as her "gross sales less any applicable customer/employee discount, less any identified returns ('assigned credits')—the retail price of merchandise which a customer has returned with a sales receipt—and, less any unidentified returns ('unassigned credits')—her pro rata share of the retail price of merchandise which a customer has returned without a sales receipt and hence without any means of identifying the salesperson who initially made the sale." The commission agreement also explained that the calculation of Mytych's pro rata share of "unidentified returns" would be based upon a percent of each commissioned salesperson's sales in her department: "For example: If you sell 10 [percent] of all merchandise in a given week, then 10 [percent] of the unassigned credits (unidentified returns) will be charged against your sales for that week." Pursuant to this commission agreement, Lord & Taylor paid Mytych all her earned wages and regularly provided her with a sales/returns commissions report that set forth the calculation of her earned commissions. At no point has Mytych argued that Lord & Taylor did not pay her her earned wages as calculated pursuant to the commission agreement.

In February, 2000, Mytych voluntarily left Lord & Taylor and assumed employment as a part-time commissioned salesperson in Filene's women's shoe department at its WestFarms Mall store. At Filene's, she was paid a 9 percent commission on her "net sales," which were calculated in the same manner as they had been pursuant to her commission agreement with Lord & Taylor. Similarly, with each paycheck, Filene's provided Mytych with a commission payment summary and a sales/returns commission report, setting forth the calculation of Mytych's wages for that pay period. Mytych's

wages were comprised of the commission based on her gross sales, less customer/employee discounts, identified returns and unidentified returns.

Michaud originally was an hourly salesperson in various departments at Lord & Taylor's Trumbull store. In May, 1995, she applied for and obtained a full-time commissioned sales position in Lord & Taylor's women's shoe department.[4] Michaud agreed that she would receive a 9.5 percent commission on her net sales. Lord & Taylor provided her with a copy of the Lord & Taylor commission agreement. This was the same commission agreement that Mytych had received. Michaud signed an acknowledgment indicating that she had read and understood the agreement. With each paycheck, Lord & Taylor provided Michaud with a sales/returns commission report, setting forth the calculation of her earned commission: the 9.5 percent of her net sales, defined as her gross sales less customer/employee discounts, identified returns and unidentified returns. It is not disputed that Lord & Taylor paid Michaud all of her earned commissions as agreed.

The plaintiffs claim that their commission agreements are invalid because they violate §§ 31-71e and 31-73 (b). They argue that the calculation utilized by the defendant is an illegal refund or deduction from earned wages prohibited by the substantive provisions set forth in the aforementioned statutes. Specifically, the plaintiffs claim that the defendant improperly deducted the pro rata share of the retail price of unidentified returns from their gross sales. They claim that this practice unfairly diminishes their commissions in that the deduction of unidentified returns bears no reasonable relationship to their job performance. They also

---

[4] Michaud testified that she accepted the commissioned sales position in lieu of the hourly sales position because she knew she could make more money as a commissioned, rather than an hourly, salesperson.

claim that the deduction of unidentified returns constitutes an improper attempt by the defendant to place on the plaintiffs the burden of its costs of doing business.[5]

The defendant argues, to the contrary, that the formula for calculating commissions is valid, and that §§ 31-71e and 31-73 (b) were not violated by the relevant contractual provisions. The defendant contends that it promised to pay the plaintiffs a commission based on a percentage of their net sales, the calculation of which was set forth in the commission agreements that both Mytych and Michaud had signed. According to the defendant, these commission agreements provided that any deductions would be taken from the gross sales and that the percentage of the resulting net sales constituted the plaintiffs' earned wages. The defendant reasons that the plaintiffs' wages, therefore, were always paid in full. We agree with the defendant that there was no statutory violation in this case.

Our standard of review of a trial court's granting of summary judgment is well established. Pursuant to Practice Book § 17-49, summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled

[5] The plaintiffs also claim that the trial court improperly rejected their claim that they had been harmed by the defendant's formula for calculating commissions on the ground that it was based on an unsupported assumption that unidentified returns were sold by another salesperson's customer. The Connecticut Employment Lawyers Association, in its amicus curiae brief, supports this claim, asserting that the defendant's formula regarding unidentified returns violates General Statutes § 31-51hh, which prohibits an employer from requiring an employee to reimburse it for any loss incurred as a result of any wrongdoing on the part of a customer. The amicus argues that the practice of deducting a share of unidentified returns from an employee's gross sales constitutes processing stolen goods returned by customers as unidentified returns and deducting the amount paid for the stolen goods from the employee's commissions. This, the amicus argues, bolsters the plaintiffs' claim of harm. We need not reach this claim, however, because the record contains no evidence of harm.

to judgment as a matter of law." Such questions of law are subject to plenary appellate review. *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 607, 783 A.2d 462 (2001).

We begin our analysis by interpreting the statutes at issue, §§ 31-71e and 31-73 (b). In order to determine the intention of the legislature, "we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 459, 704 A.2d 222 (1997).

Our examination of the plain language of the statutes reveals that the term "wages" has been defined broadly. General Statutes § 31-71a (3) expressly provides: " 'Wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation . . . ." Although the statute lists certain nonexclusive factors that may assist in the computation of an employee's wage, it fails to set forth a specific formula by which wages must be calculated or determined. Rather, it merely requires that wages be paid as compensation to an employee for services rendered. The determination of the proper amount to be tendered purposely is left vague by the reference to "or other basis of calculation" contained in § 31-71a (3).

The language used in § 31-73 (b) also suggests that the legislature intended that the employer-employee agreement, as opposed to a statutory formula, control the manner in which wages are calculated. Section 31-73 (b) provides in relevant part: "No employer . . . shall, directly or indirectly, demand, request, receive or exact any refund of wages . . . or deduct *any part of*

*the wages agreed to be paid,* upon the representation or the understanding that such refund of wages . . . or deduction is necessary to secure employment or continue in employment. . . ." (Emphasis added.) Although the statute does not define the term "agreement," it provides that the agreement shall not be violated by any deductions or other conditions. Similarly, § 31-71e provides that "[n]o employer may withhold or divert any portion of an employee's wages . . . ." The statute does not purport to define the wages due; it merely requires that those wages agreed to will not be withheld for any reason. Accordingly, we conclude that the statutes are not substantive in nature.

The trial court points to similar language from the regulations of the department of labor as further evidence of the nonsubstantive nature of §§ 31-71e and 31-73 (b). See *Roto-Rooter Services Co.* v. *Dept. of Labor,* 219 Conn. 520, 527–28, 593 A.2d 1386 (1991). " 'Commissions' means any premium or incentive compensation for business transacted whether based on per centum of total valuation or specific rate per unit of accomplishment. 'Incentive plan' means any method of compensation, including, without limitation thereto, commissions, piece rate, bonuses, etc., based upon the amount of results produced, where the payment is in accordance with a fixed plan by which the employee becomes entitled to the compensation upon fulfillment of the conditions established as part of the working agreement . . . ." Regs., Conn. State Agencies § 31-60-1 (a). Again, there are no formulaic strictures provided. Instead, the formula by which an employee's wage is calculated is determined by the agreement between the employer and the employee.

The legislative history concerning these statutes is consistent with our conclusion that these statutes do not provide substantive standards as to how wages are calculated. Their purpose is remedial; to prevent the

employer from taking advantage of the legal agreement that exists between the employer and the employee. As then Senator Nancy Johnson commented, in her support of an amendment to General Statutes § 31-72 providing employees with a private cause of action if an employer fails to pay their accrued wages: "The payment of earned wages is a [basic] right that should be assured by clear, strong state statutes. The weakness of these statutes came to my attention through the experience of a constituent [whose] wage check bounced. . . . A person must be able to count on his or her paycheck—that [it] will be forthcoming . . . and that if paid by check, that that check will not bounce." Conn. Joint Standing Committee Hearings, Labor and Industrial Relations, 1978 Sess., pp. 154–55. The purpose of the statutes, therefore, is to protect the sanctity of the wages earned by an employee pursuant to the agreement she or he has made with her or his employer. The statutes do not dictate the means by which those wages are calculated.

Our interpretation of the statutes as remedial in nature is buttressed by our prior analysis of a related statute, § 31-72,[6] which incorporates § 31-71e by reference. In *Shortt* v. *New Milford Police Dept.*, 212 Conn. 294, 304, 562 A.2d 7 (1989), we considered whether "the plaintiff could pursue an action under § 31-72 without first establishing his entitlement to uncollected wages through recourse to available grievance procedures." In that case, we determined that the administrative remedy afforded to the plaintiff through the grievance procedure was "meaningful . . . [and] an appropriate

[6] General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. . . ."

resource antecedent to his statutory right under § 31-72, and that his failure to exhaust this administrative remedy deprived the trial court of subject matter jurisdiction." Id. In order to reach that conclusion, we analyzed the legislative history of § 31-72 to ascertain whether the statute was intended to provide substantive rights regarding the employee's wages that could be pursued independent of the rights ascribed to the plaintiff by the collective bargaining agreement under which he was employed. Id., 304–309. We concluded that § 31-72 "merely provides an enhanced remedy for the collection of wages. It does not embody substantive standards to determine the amount of wages that are payable but provides penalties in order to deter employers from deferring wage payments once they have accrued. Section 31-72 is, therefore, a remedial statute rather than one creating independent substantive rights." Id., 309. Our interpretation of § 31-72 supports the notion that the wage statutes, as a whole, do not provide substantive rights regarding *how* a wage is earned; rather, they provide remedial protections for those cases in which the employer-employee wage agreement is violated. The wage agreement is not dictated by the statutes; instead, it is the integrity of that wage agreement that is protected by the statutory provisions.

The plaintiffs argue that the wage statutes do provide substantive rights that the defendant has violated by virtue of its commission agreement. Specifically, they claim that the statutes prohibit the defendant's practice of deducting the plaintiffs' pro rata share of unidentified returns from the plaintiffs' gross sales. They argue that the language of § 31-71e ("[n]o employer may withhold or divert any portion of an employee's wages"), and that of § 31-73 (b) ("[n]o employer . . . shall, directly or indirectly, demand, request, receive or exact any refund of wages . . . or deduct any part of the wages agreed to be paid"), supports their contention that the

deduction for unidentified returns from the gross sales is illegal. To lend credence to this argument, the plaintiffs claim that wages accrue at the time the service is rendered; in this case, at the time the sale of shoes is completed. It follows, they argue, that any deduction that occurs after the rendering of services, i.e., after the completed sale, is a deduction from wages and prohibited by statute.

To support this claim, the plaintiffs rely on *Hudgins* v. *Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109, 41 Cal. Rptr. 2d 46 (1995). In *Hudgins*, the court observed: "[T]o the extent the employer deducts for unidentified returns resulting from other employees . . . the conscientious sales associate is required to return a portion of commissions he or she has legitimately earned from completed sales in order to compensate [the employer] for commissions paid on sales other employees did not complete—amounts that would otherwise be a business loss the conscientious sales associate has done nothing to cause. This policy of punishing all employees for the sins of a few cannot survive scrutiny under California law." Id., 1122–23.

The reasoning of *Hudgins* is unpersuasive when applied to our wage payment statutes. As stated previously, § 31-71a (3) defines " '[w]ages' " as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation . . . ." This definition expressly leaves the determination of the wage to the employer-employee agreement, assuming some specific conditions, such as a minimum hourly wage, are met. The specific commission agreement between the defendant and the plaintiffs in this case provided that wages would accrue or vest after the agreed to calculations were made to the plaintiffs' gross sales, including the deduction of the plaintiffs' pro rata

share of unidentified returns.[7] The trial court properly found that "since [the plaintiffs'] right to a particular wage did not vest until Lord & Taylor and Filene's had applied the preapproved formula for the calculation of their earned commissions and had subtracted from their gross sales their pro rata share of unidentified returns, under the statute, Lord & Taylor and Filene's did not attempt to deduct any sums from their wages."[8]

*Hudgins* is distinguishable from the present case in that it relies on a long history of California case law and regulatory opinions establishing that an employee's right to a commission accrues or vests at the time of the actual sale. The deductions the employer made for unidentified returns, therefore, were taken from the wages that already had been earned by the employees. This is not the case presently before us. In Connecticut, there is no such settled doctrine regarding the time at which an employee's rights to his wages vests and, in

---

[7] The plaintiffs are inconsistent in their argument regarding the time at which the wages are accrued. They concede that *identified* returns are properly deducted from the gross sales amount, yet they reject the deduction of *unidentified* returns because the wages were accrued at the time the sale was completed. If an identified return, in effect, erases the sale in question, it follows that an unidentified return does as well, regardless of the fact that the actual seller is unknown. In both scenarios, a sale is rendered incomplete or negated due to the return of the item. This illustrates the fact that the wages are not accrued at the temporal moment of the sale; instead, *wages are accrued after the necessary calculations establish what are the plaintiffs' earned commissions.*

[8] As indicated in footnote 5 of this opinion, we need not reach the plaintiffs' claim that they suffered harm as a result of the defendant's practice of deducting their pro rata share of unidentified returns from their gross sales. The plaintiffs presented no evidence of harm to the trial court. "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion *must provide an evidentiary foundation* to demonstrate the existence of a genuine issue of material fact." (Emphasis added; internal quotation marks omitted.) *Buell Industries, Inc. v. Greater New York Mutual Ins. Co.*, 259 Conn. 527, 550, 791 A.2d 489 (2002). We are curtailed, therefore, from assessing this claim any further.

fact, we have concluded herein that our wage payment statutes expressly leave the timing of accrual to the determination of the wage agreement between the employer and employee. Here, the commission agreement provided that the plaintiffs' wages were calculated after the deduction for unidentified returns.

Our holding that the commission agreement is controlling is consistent with *Oja* v. *Dayton Hudson Corp.*, 458 N.W.2d 169 (Minn. App. 1990). At issue in *Oja* was a Minnesota statute prohibiting an employer from making any " 'deduction . . . from the wages due or earned' " by an employee. Id., 171. The court concluded that the employer's commission policy, which was similar to that of the defendant in the present case, did not violate state law. Id. "Because [the employee's] commission or compensation is not 'due or earned' until certain amounts for returned merchandise have been subtracted from her gross sales, [the employer's] policy does not violate Minn. Stat. § 181.79." Id. Similarly, the defendant's policy here does not violate §§ 31-71e and 31-73 (b).

The plaintiffs further claim that *Lockwood* v. *Professional Wheelchair Transportation, Inc.*, 37 Conn. App. 85, 654 A.2d 1252, cert. denied, 233 Conn. 902, 657 A.2d 649 (1995), is controlling of the present case. We conclude, however, that *Lockwood* is inapposite. Although *Lockwood* did interpret § 31-73 (b) and did find that the employer in that case had violated the statute, the facts of *Lockwood* are distinguishable from the present case. Id., 93. In *Lockwood*, the employer demanded that the employee pay a $1000 deductible on its insurance policy before allowing him to return to work following an accident that had triggered the insurance policy. Id., 87. The Appellate Court concluded that this condition violated § 31-73 (b) because "[a]n employer violates the statute whenever it demands any sum of money from an individual to secure employment or continue

employment." Id., 93. In *Lockwood*, "sufficient facts existed to allow a jury to find that [the employee] was discharged from his employment . . . because he refused to pay the $1000." Id., 92. The amount of the deductible was not part of the employee's wages, however. It was an amount completely separate and distinct from the money he had earned in his employment pursuant to any wage agreement he might have had with the employer. The Appellate Court properly concluded that the language of § 31-73 (b) was clear and unambiguous in that it prohibits an employer from demanding "any . . . sum of money or contribution from any person . . . upon the representation or the understanding that such . . . sum of money . . . is necessary to secure employment or continue in employment." (Internal quotation marks omitted.) Id. The $1000 deductible constituted such a sum of money. Id., 93.

In the present case, the plaintiffs were not asked to submit any sum of money to the defendant as a condition of their employment. Instead, as they have conceded, the plaintiffs were paid all the wages they had earned as calculated according to the formula to which they specifically had agreed. The characteristics of that formula—specifically, the deductions from the plaintiffs' gross sales in order to obtain the net sales amount upon which their commissions were based—were determined by the commission agreement. The commission agreement, in and of itself, did not violate § 31-73 (b) because it did not "demand, request, receive or exact any . . . sum of money or contribution from any person . . . ." Rather, it merely calculated the commissions earned by individual salespersons, taking into account factors such as identified and unidentified returns that alter the total amount of gross sales for which the individual salesperson can claim responsibility.

We conclude that the trial court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other justices concurred.