[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO STRIKE (101.00)
The plaintiff Sven Selander, Jr. has commenced a civil action against SoundView Technology Corporation (SoundView) by means of a six-count complaint. SoundView has moved to strike four counts.
 FACTS
Selander alleges the following facts in his complaint. He was employed by SoundView in April 1996, at which time the parties entered into an employment agreement (agreement). The agreement stated that if the plaintiff was terminated without cause, he was entitled to continued salary and benefits for the balance of the annual employment term.
Selander alleges he was required to work long and unusual hours, including evenings and weekends, because his job involved maintaining the computer operations of SoundView's business, which was done outside of regular business hours. The defendant asked the plaintiff to upgrade the business' computer hardware and assist in downloading computer software over the Martin Luther King, Jr. holiday in 2002.[1] Selander reported to his job at 3:30 a.m. on Saturday, January 19, 2002, and worked for approximately eighteen hours, at which point he asked his supervisor for permission to go home. The supervisor denied the request, and insisted that he keep working. Selander, physically and mentally exhausted, insisted upon leaving. His supervisor allowed him to leave, but told him that he would be advised of the consequences. Selander further alleges that the defendant terminated him on March 4, 2002, for the incident of January 19, 2002, and alleges that his termination took place just days before the defendant reduced its workforce, and provided those employees who were laid-off with two weeks notice, and seven weeks of severance pay.
In the six-count complaint, Selander asserts causes of action for breach of contract, violation of General Statutes § 31-72, wrongful CT Page 2086 discharge, breach of duty of good faith and fair dealing for an express contact, breach of duty of good faith and fair dealing for an implied contract, and negligent infliction of emotional distress in counts one through six, respectively. The defendant now moves to strike counts two, three, five and six.
 DISCUSSION
"A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Suffield Development Associates Ltd.Partnership v. National Loan Investors, L.P., 260 Conn. 766, 771-72,802 A.2d 44 (2002). "First, the court must accept as true the facts alleged in the complaint." Pamela B. v. Ment, 244 Conn. 296, 325,709 A.2d 1089 (1998). "Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citations omitted; internal quotation marks omitted.) Gazo v. Stamford,255 Conn. 245, 260, 765 A.2d 505 (2001).
In count two, Selander alleges that SoundView failed to pay him wages, pursuant General Statutes § 31-71a (3), and benefits, pursuant §31-76k, for the balance of the term of his employment in violation of § 31-72. The defendant argues that the plaintiff fails to state a claim on which relief can be granted because General Statutes § 31-71a
(3) pertains to wages earned for services already rendered, and the plaintiff's claim is for wages and benefits for the unperformed balance of his contract. The defendant also argues that the plaintiff's attempt to cure this deficiency by arguing that the wages due constitute severance fails because Connecticut does not recognize severance payments as a wage. The defendant further contends that the plaintiff fails to state a claim pursuant § 31-76k because he fails to plead sufficient facts indicating that it owes him any accrued benefits. Selander responds that his claim for post-termination payments are considered wages pursuant § 31-71a (3), and under Connecticut law, such payments are deemed earned when bargained for in exchange for promises of confidentiality and nonsolicitation. The plaintiff also argues that he is entitled to certain benefits pursuant § 31-76k, that he bargained for these benefits in exchange for his services, and that such benefits accrued upon his termination. CT Page 2087
As to the SoundView's first argument, General Statutes § 31-72
provides: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorneys fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action." Subsection § 31-71a (3) of the General Statutes defines wages as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation . . ." (Emphasis added.) "This definition [31-71a (3)] expressly leaves the determination of the wage to the employer-employee agreement, assuming some specific conditions, such as a minimum hourly wage, are met." Mytych v. May Dept. Stores Co.,260 Conn. 152, 163, 793 A.2d 1068 (2002). "In Connecticut, there is no . . . settled doctrine regarding the time at which an employee's rights to his wages vest, and, in fact, we have concluded herein that our wage payment statutes expressly leave the timing of accrual to the determination of the wage agreement between the employer and employee."Id., 164-65. "Thus, [t]he normal rule on an employment contract is that when the employee is prevented from fully performing because the employer wrongfully fires him, the employee can recover the wages he would have earned under the contract, minus any wages which he has earned or could have earned elsewhere . . ." (Internal quotation marks omitted.) Torosyanv. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 32-33,662 A.2d 89 (1995).
The plaintiff alleges that the terms of the employment agreement executed by the parties determined his wage. He also alleges that the agreement included a provision that if he was terminated without cause, he would continue receiving salary and benefits for the balance of the term of the agreement. Furthermore, the plaintiff alleges that he was terminated without cause and, therefore, is entitled to these wages pursuant the agreement, and that the defendant refused to pay him. As previously noted, parties to an employment contract may determine the time in which a wage payment accrues, and the employment contract, if enforceable, is controlling in determining whether a party has violated § 31-72. See Mytych v. May Dept. Stores Co., supra, 260 Conn. 163-65. Accordingly, the plaintiff alleges sufficient facts to maintain an action against the defendant for violation of § 31-72.
As to the defendant's second argument, § 31-76k provides: "If an employer policy . . . provides for the payment of accrued fringe benefits upon termination, including but not limited to paid vacations, holidays, CT Page 2088 sick days and earned leave, and an employee is terminated without having received such accrued fringe benefits, such employee shall be compensated for such accrued fringe benefits exclusive of normal pension benefits in the form of wages in accordance with such agreement or policy but in no case less than the earned average rate for the accrual period pursuant to sections 31-71a to 31-71i, inclusive." "[T]he term employer policy [in § 31-76k] relates not to the employer's intent with regard to a single employee, but to its intentions regarding either its employees generally or discrete classes of employees." (Internal quotation marks omitted.) Fennell v. Hartford, 238 Conn. 809, 821, 681 A.2d 934 (1996).
The plaintiff alleges that the agreement he had with the defendant entitles him to certain benefits that were not paid to him upon termination. This allegation alone does not indicate the presence of an employment policy.[2] It must be noted, however, that the plaintiff's allegations pertaining to the defendant's violation of § 31-76k are in the same paragraph as his allegations pertaining to § 31-71a (3). Although, "an individual paragraph of a complaint may be the proper subject of a motion to strike where it alleges a separate cause of action . . . where the individual paragraph does not contain a separate cause of action a motion to strike that paragraph is improper." (Citation omitted.) Glander v. Licht, Superior Court, judicial district of Danbury, Docket No. CV 96 322773 (March 18, 1997, Moraghan, J.). Accordingly, the motion to strike count two is denied.
In count three, Selander alleges that he was wrongfully terminated because he refused to remain at work on January 19, 2002, and that SoundView violated public policy by requiring him to work unreasonable and abusive hours in violation of General Statutes §§ 31-21 and 53-303e, and by terminating him so as to avoid paying him severance. SoundView moves to strike this count on the basis that in count one, the plaintiff alleges that he was a contractual employee, and a wrongful discharge claim may only be brought by an at will employee. The defendant also contends that even if the plaintiff adequately pleaded at will employee status, he cannot bring this claim because he has a remedy pursuant §§ 31-21 and 53-303e. Selander responds that he is bringing the wrongful discharge claim as an alternative, in the event that the defendant succeeds in denying the existence of an enforceable employment agreement. The plaintiff also argues that § 31-21 does not have a remedial provision, and that § 53-303e, which provides for arbitration, cannot be compelled where the parties have not agreed to arbitrate.
As to the defendant's first argument, Practice Book § 10-25
provides: "The plaintiff may claim alternative relief, based upon an CT Page 2089 alternative construction of the cause of action." The Connecticut Supreme Court provides that "[u]nder our pleading practice, a plaintiff is permitted to advance alternative and even inconsistent theories of liability against one or more defendants in a single complaint . . . [Dreier v. Upjohn Co., 196 Conn. 242, 492 A.2d 164 (1985),] alludes to a line of cases which hold that this type of liberal pleading policy would be frustrated were the pleader subjected to the risk that anything he pleads will be held against him even if he withdraws or abandons it." (Internal quotation marks omitted.) Danko v. Redway Enterprises, Inc254 Conn. 369, 379, 757 A.2d 1064 (2000).[3]
Although, SoundView is correct that only an at will employee may bring a wrongful discharge claim; Thibodeau v. Design Group One Architects,LLC, 260 Conn. 691, 698-99, 802 A.2d 731 (2002); in this case, and at this point in the proceedings, the plaintiff's employment status has not yet been established. In count three, the plaintiff does not allege that he had an express contract of employment. Moreover, he alleges additional facts in count three, and does not incorporate the allegations of the first count regarding the employment agreement.[4] See Crist v. O'Keefe Associates, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 0387651 (May 1, 2002, Gallagher, J.). Thus, the plaintiff is entitled to plead breach of contract and wrongful discharge as alternative theories.
As to the defendant's second argument, our Supreme Court has "recognized a common-law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrablyimproper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original; internal quotation marks omitted.) Burnham v. Karl Gelb, P.C.,252 Conn. 153, 159, 745 A.2d 178 (2000). "A finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer." (Internal quotation marks omitted.) Id. In addition, the court must find that "the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." (Emphasis in original; internal quotation marks omitted.)Id., 159-60. Furthermore, "[w]hen a plaintiff has available to him administrative remedies that could have afforded him meaningful relief . . . [h]is failure to [properly pursue those remedies] forecloses his access to judicial relief, because it deprive[s] the trial court of jurisdiction to hear his complaint . . . In addition, when a plaintiff fail[s] to follow the administrative route prescribed by the legislature for his claim . . . the plaintiff fails to exhaust his or her administrative remedies." (Citations omitted; internal quotation marks CT Page 2090 omitted.) Id., 168-69. Here, SoundView fails to cite any authority regarding the availability of a remedy under General Statutes § 31-22. Although, the defendant does not adequately brief its argument, the court must address it because it implicates the court's subject matter jurisdiction over the claim.[5]
General Statutes § 31-21 provides: "Eight hours of labor performed in any one day by any one person shall be a legal day's work unless otherwise agreed." Section 31-22 provides that: "The Labor Commissioner shall examine into . . . the observance of the regulations contained in parts I and II of this chapter . . . investigate all complaints of violations thereof and report all cases of such violations to the prosecuting officer having jurisdiction thereof." Furthermore, General Statutes § 31-50 provides: "The commissioner shall enforce the provisions of part I of this chapter . . . by giving proper orders or notices to the persons or corporations owning, operating or managing the factories or buildings inspected by him and shall make complaint to the state's attorneys of any violation of said provisions." Section 31-21 is contained within part I of the chapter referred to in §§ 31-22 and31-50, and, therefore, "[does] not give rise to a private cause of action as [a violation] of [the] statute [and is] within the sole jurisdiction of the Labor Commissioner pursuant to section 31-50 [and section 31-22]."Wright v. Turner Seymour Manufacturing Co., Superior Court, judicial district of Litchfield, Docket No. CV 54079 (June 25, 1991, Pickett, J.); see also Swaney v. Pfizer, Inc., Superior Court, judicial district of New London, Docket No. 541984 (March 17, 1999, Mihalakos, J.) (24 Conn.L.Rptr. 183, 184-85).
Therefore, the plaintiff has an administrative remedy under §§ 31-22
and 31-50, and neither statute authorizes a party to bypass the administrative process, and immediately bring an action in the Superior Court. This court is without subject matter jurisdiction to hear the plaintiff's claim for wrongful termination to the extent that it is premised on a violation of § 31-21.
The defendant also argues that the plaintiff has a remedy under §53-303e. Section 53-303e (a) provides: "No employer shall compel any employee engaged in any commercial occupation or in the work of any industrial process to work more than six days in any calendar week. An employee's refusal to work more than six days in any calendar week shall not constitute grounds for his dismissal."[6] Section 53-303e (c) provides: "Any employee, who believes that his discharge was in violation of subsection (a) or (b) of this section may appeal such discharge to the State Board of Mediation and Arbitration. If said board finds that the employee was discharged in violation of said subsection (a) or (b), it CT Page 2091 may order whatever remedy will make the employee whole, including but not limited to reinstatement to his former or a comparable position."
Thus, § 53-303e (c) provides the plaintiff with an administrative remedy for the defendant's alleged violation of § 53-303e (a). While this would normally preclude him from bringing this action, our Supreme Court recognizes "certain limited exceptions to the exhaustion requirement. Such exceptions include where the available relief is inadequate or futile . . . or where local procedures cannot effectively, conveniently or directly determine whether the plaintiff is entitled to the relief claimed." (Internal quotation marks omitted.) River BendAssociates, Inc. v. Simsbury Water Pollution Control Authority,262 Conn. 84, 103, 809 A.2d 492 (2002).
In this case, the remedy provided under subsection 53-303e (c) "mandates compulsory arbitration and defines the powers of the arbitrators" even though "[o]rdinarily, [a]rbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators." (Internal quotation marks omitted.) Caldor, Inc. v. Thornton, 191 Conn. 336, 341, 464 A.2d 785
(1983), aff'd., 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985). Our Supreme Court has questioned whether arbitration may be mandated where the parties have not explicitly agreed by contract to arbitrate. SeeId., 341 n. 3. Furthermore, the Connecticut Supreme Court has explicitly stated that "a person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner in which, he has agreed so to do." (Emphasis added; internal quotation marks omitted.) White v. Kampner,229 Conn. 465, 471, 641 A.2d 1381 (1994). "No one can be forced to arbitrate a contract dispute who has not previously agreed to do so." A.Dubreuil Sons, Inc. v. Lisbon, 215 Conn. 604, 608, 577 A.2d 709
(1990).
In discussing General Statutes § 52-408,[7] which regulates the enforcement of written arbitration agreements, the Appellate Court noted that "[a]rbitration is the voluntary submission, by the interested parties, of an existing or future dispute to a disinterested person or persons for final determination . . . General Statutes § 52-408
provides a statutory right for parties to agree in writing to arbitration." (Internal quotation marks omitted.) Preston v. O'Rourke,74 Conn. App. 301, 310, 811 A.2d 753 (2002). "Section 52-408 . . . provides, in essence, only that a written agreement to arbitrate is enforceable." Franco v. East Shore Development, Inc., 73 Conn. App. 303,308 n. 5, 807 A.2d 1039 (2002).
Here, neither party alleges that they agreed to arbitrate the disputes CT Page 2092 put forth in this case. Therefore, this court must assume that no such agreement exists.[8] In this case, § 53-303e (c) does not provide the plaintiff with an adequate remedy because the parties have not agreed to arbitrate this dispute. Therefore, this court has subject matter jurisdiction over the plaintiff's claim pursuant subsection § 53-303e
(a).
Finally, the plaintiff also argues that the defendant acted contrary to public policy by terminating him in a way as to avoid paying him severance, and that such conduct supports a claim for wrongful discharge. The defendant argues that the plaintiff's allegation is insufficient because he fails to allege that he had a legal right to be included in the group of employees it discharged during the reduction of its workforce, and that such a decision is within the discretion of an employer.
In discussing wrongful termination, the Connecticut Supreme Court has noted its "adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one . . . This narrow public policy exception allowing a common-law wrongful discharge action by an employee who can prove a demonstrably improper reason for dismissal is an attempt to balance the competing interests of employer and employee . . . The employer is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability. Employee job security, however, is protected against employer actions that contravene public policy . . . Accordingly, the employee has the burden of proving a violation of important public policy." (Citations omitted; emphasis in original; internal quotation marks omitted.) Cimochowski v. HartfordPublic Schools, 261 Conn. 287, 306, 802 A.2d 800 (2002). "In evaluating claims, [w]e look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." Thibodeau v. Design Group OneArchitects, LLC, supra, 260 Conn. 699.
Although, the plaintiff does not specifically state that the defendant violated a statute[9] regarding severance, as previously noted, §31-76k provides: "If an employer policy . . . provides for the payment of accrued fringe benefits upon termination, including but not limited to paid vacations, holidays, sick days and earned leave, and an employee is terminated without having received such accrued fringe benefits, such employee shall be compensated for such accrued fringe benefits exclusive of normal pension benefits in the form of wages in accordance with such agreement or policy . . ." "[T]he term employer policy [in General CT Page 2093 Statutes § 31-76k] relates not to the employer's intent with regard to a single employee, but to its intentions regarding either its employees generally or discrete classes of employees." (Internal quotation marks omitted.) Fennell v. Hartford, supra, 238 Conn. 821.
In count three, the plaintiff alleges that the employees the defendant terminated in its reduction of force just days after he was terminated were provided two weeks notice and seven weeks severance pay, and that he was not. This allegation suggests that the defendant had an employee policy regarding termination pay. Accordingly, the defendant's motion to strike count three is denied.[10]
In count five, the plaintiff incorporates the allegations of count three, and alleges that the defendant's conduct breached its duty of good faith and fair dealing when it wrongfully discharged him. The defendant moves to strike count five because the plaintiff fails to state a claim for wrongful discharge, and therefore, cannot, as a matter of law, bring a claim for breach of the covenant of good faith and fair dealing with respect to that claim.[11] The plaintiff concedes that count five is contingent on the survival of count three, and argues that it is properly alleged because the claim is derived from the defendant's alleged violation of public policy by terminating him to avoid paying him severance, and violating General Statutes §§ 31-21 and 53-303e (a).
"In Magnan v. Anaconda Industries, Inc., [193 Conn. 558, 572,479 A.2d 781 (1984)], our Supreme Court held that a plaintiff . . . has a cause of action for wrongful discharge in contract for violation of the implied covenant of good faith and fair dealing. That cause of action, however, is coterminous with, and extends no further than, a cause of action for wrongful discharge in tort." (Internal quotation marks omitted.) Battista v. United Illuminating Co., 10 Conn. App. 486, 495,523 A.2d 1356, cert. denied, 204 Conn. 802, 525 A.2d 1352 (1987).
The plaintiff sufficiently pleads a cause of action for wrongful discharge. He incorporates these claims into count five, and in so doing, maintains that his discharge involved impropriety contrary to public policy. He, therefore, sufficiently pleads an action for breach of an implied duty of good faith and fair dealing. The defendant's motion to strike count five is denied.
In count six, the plaintiff realleges and incorporates the allegations of count three, in which he claims that the defendant required him to work long and unreasonable hours, threatened that consequences would ensue if he left work on January 19, 2002, and terminated him to avoid paying him severance. The defendant moves to strike this count on the CT Page 2094 ground that the plaintiff fails to allege that the defendant acted in an egregious, outrageous, or humiliating manner during the termination process. The plaintiff responds that he sufficiently alleges this element by incorporating the allegations of count three into count six.
Our Supreme Court in Perodeau v. Hartford, 259 Conn. 729, 762-63,792 A.2d 752 (2002), held that a employer is not liable for "negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." In reviewing negligent infliction of emotional distress in the employment context "[t]he dispositive issue . . . [is] whether the defendant's conduct during the termination process was sufficiently wrongful such that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." (Emphasis in original; internal quotation marks omitted.) Id., 751. "Accordingly, negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citation omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp. , 243 Conn. 66, 88-89,700 A.2d 655 (1997).
The plaintiff fails to allege conduct by the defendant during the termination process that transgressed the bounds of tolerable behavior. Moreover, his allegation that employees terminated after him received severance packages, and that he did not, does not indicate that the defendant acted unreasonably toward the plaintiff. Parsons v. UnitedTechnologies Corp. , supra, 243 Conn. 88-89. Accordingly, the defendant's motion is granted as to count six.
 CONCLUSION
The court denies the defendant's motion to strike counts two, three and five, and grants the motion as to count six.
 TAGGART D. ADAMS SUPERIOR COURT JUDGE