23-1239
Green v. RXO Last Mile, Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

<u>**SUMMARY ORDER**</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of September, two thousand twenty-four.

PRESENT:
> GERARD E. LYNCH,
> MYRNA PÉREZ,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

---

LEON GREEN and WALDO TEJADA, individually and on behalf of all others similarly situated,

> *Plaintiffs-Appellants*,

> v.                                                          No. 23-1239

RXO LAST MILE, INC.,

> *Defendant-Appellee.**

---

* The Clerk of Court is respectfully directed to amend the official caption as set forth above.

**FOR PLAINTIFFS-APPELLANTS:**

HAROLD L. LICHTEN (Zachary L. Rubin, Benjamin L. Weber, Olena Savytska, Jack Bartholet, *on the briefs*), Lichten & Liss-Riordan, P.C., Boston, MA.

**FOR DEFENDANT-APPELLEE:**

ADAM L. LOUNSBURY (David R. Golder, Jackson Lewis P.C., Hartford, CT, *on the brief*), Jackson Lewis P.C., Richmond, VA.

Appeal from a judgment of the United States District Court for the District of Connecticut (Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment is **AFFIRMED**.

Plaintiffs-Appellants Leon Green and Waldo Tejada are drivers whom Defendant-Appellee RXO Last Mile, Inc. ("RXO") hired to perform deliveries. They allege in this diversity class action that the standard Delivery Service Agreement ("Agreement") into which they entered with RXO illegally provided for deductions from their wages earned.[2] We affirm the district court's grant of summary judgment to RXO because those Agreements merely set forth the bargained-for wages RXO would pay Appellants.

## BACKGROUND

RXO is a logistics company that arranges "last mile" deliveries of large items such as furniture for companies like Lowes and Amazon. RXO in turn contracts with Delivery Service Providers ("DSPs"), including Green's LG Family LLC and Tejada's Tejada Express LLC, to perform the deliveries. The terms of the Agreement between DSPs and RXO provide that DSPs

---

[2] Each named plaintiff owned and operated an LLC that entered into the actual agreements with RXO.

may earn revenue on either a per-delivery-stop or a flat, daily rate basis, with add-on fees for certain additional services provided. According to the Agreement, before RXO pays DSPs, it will engage in a "reconciliation" process to offset the amount due by the amount of any loss or damage to product or property that occurred during the DSP's delivery process. Additionally, the Agreement requires DSPs to bear their own operational expenses, including the wages of any employees, employment taxes, and certain types of insurance coverage that the Agreement specifies. The Agreement explains that RXO contracts with the DSP entity only and that the DSP retains absolute control and direction over its employees.

In 2019, Green and Tejada filed a putative class complaint alleging two causes of action. First, they alleged that the deductions from their income for which the Agreement provides violate Connecticut's Minimum Wage Act, Conn. Gen. Stat. § 31-71e, which prohibits "withhold[ing] or divert[ing]" wages. Second, they contended that RXO misclassifies drivers as independent contractors rather than employees and on that basis illegally shifts business expenses to DSPs, giving rise to their unjust enrichment claim.

The district court certified a class of about 275 delivery drivers limited to "[a]ll individuals who personally or on behalf of their business entity[] signed a Delivery Service Agreement with [RXO] and who personally performed deliveries for [RXO] full-time in Connecticut between November 2017 and the present." *Green v. XPO Last Mile, Inc.*, No. 3:19-cv-1896 (JAM), 2022 WL 4380959, at *1-2 (D. Conn. Sept. 22, 2022). RXO moved for summary judgment, and Plaintiffs-Appellants cross-moved for partial summary judgment, seeking a finding that class members were employees rather than independent contractors. The District Court determined that "there is no genuine issue of fact . . . to support the plaintiffs' claim that they were subject to

3

unlawful wage deductions in violation of Conn. Gen. Stat. §31-71e," because the deductions were permitted by agreement and thus legal under Connecticut law.  *Green v. RXO Last Mile, Inc.*, No. 3:19-cv-1896 (JAM), 2023 WL 5486250, at *7 (D. Conn. Aug. 24, 2023).[3]  The District Court also "declined to certify to the Connecticut Supreme Court questions concerning the issue of how to define wages and lawful deductions under Connecticut law."  *Id.* at *7 n.33.  Accordingly, it granted RXO's motion for summary judgment.

Green and Tejada timely appealed.  They ask this Court to certify to the Connecticut Supreme Court the question of the definition of wages, and what constitutes illicit deductions therefrom, under the Minimum Wage Act, or alternately to address the interpretive question itself and reverse.  We assume the parties' familiarity with the remaining underlying facts, the procedural history, and the issues on appeal.

### STANDARD OF REVIEW

"We review de novo a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor."  *Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023) (internal quotation marks and citation omitted).  Summary judgment is proper when, viewing all facts in the light most favorable to the non-moving party, the district court finds there is no genuine dispute of material

---

[3] The district court also disposed of the unjust-enrichment cause of action, finding that the record did not support a genuine issue of material fact as to whether RXO was shifting its statutory obligation to provide workers' compensation to the plaintiff class, assuming the class was misclassified as independent contractors.  But because Appellants did not adequately brief the issue, we do not address it further.  Ordinarily, arguments raised perfunctorily, "unaccompanied" by "developed argumentation," are forfeited.  *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (citation omitted); *see United States v. Graham*, 51 F.4th 67, 80 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 1754 (2023).

4

fact for a jury to resolve.  *See Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023).

## DISCUSSION

Connecticut's Minimum Wage Act provides that employers may not "withhold or divert any portion of an employee's wages" save in specific, enumerated cases not relevant here.[4] Conn. Gen. Stat. § 31-71e.  The Connecticut Supreme Court has construed this provision to exclude so-called "deductions" taken as part of a bargained-for formula for determining wages. Applying this rule to Appellants' pay, we conclude that the Agreement between RXO and the DSPs did not violate either statute.

### I.  <u>Connecticut Supreme Court Precedent Determines the Case</u>

As this Court has previously explained, "the Connecticut Supreme Court . . . authoritatively determined that" the Minimum Wage Act protects agreements to calculate wages according to specific formulas.  *Mujo v. Jani-King Int'l, Inc.*, 13 F.4th 204, 216 (2d Cir. 2021).   In *Mytych v. May Dep't Stores Co.*, department store salespersons alleged that deductions from their commission-based pay for items customers eventually returned violated Sections 31-71e and a related anti-kickback statute in the same chapter, Conn Gen. Stat. § 31-73(b), whose text similarly prohibits "deduction[s]" from "wages" paid.   793 A.2d 1068, 1070–71 (Conn. 2002).   Under the anti-kickback statute, employers may not require such deductions as a condition of employment.

---

[4] Like the Second Circuit panel in a recent, applicable case, we assume that Appellants are covered employees under the relevant provision of the Minimum Wage Act, Conn. Gen. Stat. § 31-71e, rather than independent contractors. *See Mujo v. Jani-King Int'l, Inc.*, 13 F.4th 204, 210 n.2, 211 (2d Cir. 2021).   We do so because even if we were to answer this threshold question in Appellants' favor, summary judgment for RXO was proper.

*See* Conn Gen. Stat. § 31-73(b). The court interpreted the two wage statutes in tandem.[5] It held that the statutory scheme allows parties to agree to use formulas to determine wages. Rather than "dictat[ing] the means by which . . . wages are calculated," it explained that the legislature meant only to "protect the sanctity of the wages earned by an employee pursuant to the agreement she or he has made with her or his employer." *Mytych*, 793 A.2d at 1073–74. The Connecticut Supreme Court reasoned that an agreed-upon subtraction from wages is not an illegal "deduction"—it is encompassed within the very definition of "wages." *See id*. 1072–1073; *id*. at 1072 (explaining that Section 31-71e "does not purport to define the wages due; it merely requires that those wages agreed to will not be withheld for any reason"); *see also id*. (discussing the parallel anti-kickback statute's protection of "*any part of the wages agreed to be paid*" (quoting Conn. Gen. Stat. § 31-73(b))).

This Circuit applied *Mytych* in *Mujo*, where a franchisor contracted with franchisees to pay them the revenue earned from customers, less certain fees. 13 F.4th at 207. We concluded that the "agreement expressly provides for the deductions" and that they were therefore lawful under Sections 31-71e and the related anti-kickback statute. *Id*. at 211–14; *see also id*. at 211 ("[T]here is a strong public policy in Connecticut favoring freedom of contract." (quoting *Geysen v. Securitas Sec. Servs. USA, Inc.*, 142 A.3d 227, 234 (2016))).

Green and Tejada similarly agreed to a formula for determining the compensation their DSPs would receive. Their Agreement with RXO provides that their wages are subject to a

---

[5] Because the Connecticut Supreme Court has given the relevant statutory language in the Minimum Wage Act the same interpretation as that in the anti-kickback statute, we also canvass the case law on Section 31-73(b) in considering this appeal.

"reconciliation" process that accounts for damaged and lost property. Appellants' "wages" are the net amount following application of this formula. *See Mytych*, 793 A.2d at 1073–74.

Moreover, this case differs from others that Connecticut courts have determined do violate the wage statutes. The Connecticut Supreme Court distinguished *Lockwood v. Professional Wheelchair Transportation, Inc.*, 654 A.2d 1252 (Conn. App. Ct. 1995), in its *Mytych* opinion. *See Mytych*, 793 A.2d at 1075–76. *Lockwood*, a state appellate court case, involved an employer's demand that an employee pay a $1000 deductible on the *employer's* insurance policy following an accident. *Lockwood*, 654 A.2d at 1255–56. The employee had not previously agreed that his employer could subtract its insurance costs from his wages. That is, the employer required payment of "an amount completely separate and distinct from the money [the employee] had earned in his employment pursuant to any wage agreement," in violation of the anti-kickback statute. *Mytych*, 793 A.2d at 1075. And more recently, in *Dunn v. Northeast Helicopters Flight Services, LLC*, the Connecticut Supreme Court found summary judgment in favor of a helicopter flight school inappropriate under the anti-kickback statute when it had demanded a cut of the fees its employee, a flight instructor, would earn if he became a Federal Aviation Administration (FAA) examiner. *See* 290 A.3d 780, 783–85 (Conn. 2023). The employee had wanted to pursue the examiner role to establish a stream of income "separate from his employment" at the flight school. *Id*. at 785. The demand in *Dunn* thus resembles that in *Lockwood*—for a sum independent of bargained-for wages. *See Dunn*, 290 A.3d at 790. But Appellants' claims here are dissimilar from these scenarios. RXO never demanded a "separate and distinct" additional sum of money. *See Mytych*, 793 A.2d at 1075. It paid Appellants, through the DSPs, all the bargained-for wages due.

7

The facts of this case place it squarely within the ambit of Connecticut Supreme Court precedent. Accordingly, the district court did not err in granting summary judgment in favor of RXO.

## II.    There Is No Need to Certify This Question to the Connecticut Supreme Court

Finally, we decline Appellants' invitation to certify the question of the proper interpretation of Connecticut's Minimum Wage Act to the state supreme court. Ordinarily, where this Court adjudicates a question of state law, the highest court of that state has the final word on the law's meaning. *See Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 101 (2d Cir. 2021). This Court certifies questions to a state supreme court when "[t]here are determinative questions of [state] law . . . to which it appears there is no controlling precedent in the decisions of" the state's supreme court, *Stephens v. Nat'l Distillers & Chem. Corp.*, 6 F.3d 63, 64 (2d Cir. 1993), *as modified on denial of reh'g* (Jan. 18, 1996), and we determine that we cannot "predict" how that court would resolve these questions. *Khan v. Yale Univ.*, 27 F.4th 805, 818 (2d Cir. 2022) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)). But our task when there is "controlling precedent in the decisions of" the state's supreme court is straightforward. *See Stephens*, 6 F.3d at 64.

Like the *Mujo* Court, we find that "the proposed questions have already been answered by the 'authoritative state court decisions.'" *Mujo*, 13 F.4th at 215 (citation omitted). Because the Connecticut Supreme Court's recent decision in *Dunn* only ratifies the principles already established in *Mytych*, as discussed above, *see* 290 A.3d at 788–89, 791 n.3 (discussing *Mytych* favorably), this case would pose no new question of law.

In sum, Appellants ask no question that breaks new ground. The district court properly

applied "the uncontroversial proposition that an employee and employer may enter into an employment contract that defines the employee's wages" according to a set formula. *Mujo*, 13 F.4th at 215.

*     *     *

We have considered Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court